UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| AMF BOWLING CENTERS, INC., *et al.* ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:23cv448 |
| ) | |
| THOMAS TANASE ) | |
| ) | |
|     Defendant. ) | |
| ) | |

**OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW Defendant Thomas Tanase ("Defendant" or "Mr. Tanase") and in Opposition to Plaintiffs AMF Bowling Centers, Inc.'s and Bowlero Corp.'s ("Bowlero") (collectively the "Defendants" or "Company") Motion for Temporary Restraining Order and Preliminary Injunction states as follows:

**STATEMENT OF THE CASE**

This case is not about some fantastical conspiracy and plot for revenge to bury the Company and its CEO as the Complaint and Motion would have this Court believe.

This case is about a Company trying to silence a wrongfully terminated individual who, because of his 21-years of service and former position with the Company, has damaging information concerning the Company that is relevant to pending, and future, EEOC and/or other charges against the Company, including those to be brought by Mr. Tanase.

Contrary to ad hominem attacks and other aspersions against Mr. Dowe in the Plaintiff's pleadings, the truth of the matter as described in Bowlero's Quarterly Report for the quarterly period ended January 1, 2023, is that:

1

> "There is currently a group of approximately 73 pending claims, filed with the Equal Employment Opportunity Commission (the "EEOC") between 2016 and 2019, generally relating to claims of age discrimination. To date, the EEOC issued determinations of probable cause as to 55 of the charges, which the Company contests and intends to defend vigorously. The EEOC has also alleged a pattern or practice of age discrimination, which resulted in a determination of probable cause and, on August 22, 2022, the EEOC submitted a proposal for the Company to participate in the conciliation process. The EEOC's proposal includes a demand for monetary and non-monetary remedies."[1]

The wealth of evidence brought to the EEOC by Mr. Dowe and his clients over the past five years resulted in a separate Directed Investigation by the EEOC, representing any and all persons having claims of discrimination against Bowlero. The monetary demand made by the EEOC and referred to in Bowlero's Quarterly Report is Sixty Million Dollars.[2] Additional claims are still being filed. Mr. Tanase's Charge of Discrimination is anticipated to be filed this week. In short, Mr. Dowe's clients are 55 for 55 in receiving a determination of probable cause with the determinations on the remaining claims still pending.

This is relevant to the present matter because the intent of the Motion is to silence Mr. Tanase and attack his credibility. Mr. Tanase, as the former Chief Information Officer, can be expected to give damming testimony against the Company with respect to the EEOC and other potential claims against the Company, including those related to financial matters, management decisions, and potential breaches of fiduciary duties. Mr. Tanase, did not and does not, need any confidential documents to

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001840572/00016Micro28023003700/bowl-20230101.htm

[2] https://www.cnbc.com/2023/05/11/bowlero-bowl-faces-dozens-of-eeoc-discrimination-claims.html

provide such testimony. Mr. Tanase has no interest in improperly retaining, disclosing or utilizing any confidential or other information belonging to the Company. He intends and always has intended to pursue his claims in the proper manner.

## STATEMENT OF FACTS

A.     Mr. Tanase's 21-Year Employment As Bowlero

Mr. Tanase was hired by Strike Holdings, LLC, a predecessor of Bowlero on June 10, 2002, as Senior Vice President of Information Technology. *See* Ex. 1 ¶3 (Affidavit of Tanase). Through his tireless and dedicated service Mr. Tanase ultimately became Bowlero's Chief Information Officer (CIO), which is the position he held at the time of his wrongful termination on May 16, 2022. *See* Ex. 1 ¶3.

B.     Mr. Tanase Was Wrongfully Terminated

   1.     Mr. Tanase Never Resigned.  He Was Wrongfully Terminated.

Mr. Tanase never resigned he was wrongfully terminated. *See* Ex. 1 ¶4.  On May 15, 2023, Mr. Tanase had a verbal dispute with his supervisor Lev Ekster. *See* Ex. 1 ¶6. Based on Mr. Tanase's knowledge of Bowlero's pattern and practice of conducting business he rightfully believed that Mr. Ekster was trying to create a pretext for Mr. Tanase's termination or was trying to force Mr. Tanase to resign. *See* Ex. 1 ¶5 Prior to the May 15, 2023 verbal dispute with Mr. Ekster, Mr. Tanase had raised complaints regarding Mr. Ekster's behavior and treatment of Mr. Tanase and his staff to the former president Brett Parker, as well as the head of human resources for the Company. *See* Ex. 1 ¶5 Mr. Tanase had no intention of resigning and desired to finish his career with the Company.  *See* Ex. 1 ¶6.

Contrary to the self-serving second hand account in Plaintiff's Memorandum, Mr. Tanase never told Mr. Ekster that he resigned. *See* Ex. 1 ¶4-6.  Mr. Tanase said the exact opposite,

making a statement to Mr. Ekster to the effect that if Mr. Ekster was trying to get Mr. Tanase's resignation then he would have to do it himself and resign Mr. Tanase. *See* Ex. 1 ¶6.

In fact, the very next day, Mr. Tanase reported to work in the morning as normal and participated in three meetings before being called into Human Resources at which time he was wrongfully terminated. *See* Ex. 1 ¶7. After being wrongfully terminated, Heather Webb, Vice President of Human Resources, falsely and inaccurately tried to state in email communications with Mr. Tanase that he resigned. *See* Ex. 1 ¶8-9. Mr. Tanase, repeatedly refuted said false statements by writing "I maintain that I did not quit nor did I give Lev my resignation. The fact that I have been on meetings all day speaks for itself" and "I never told anyone anything about resigning." Ex. 1 ¶9.

The proposed Separation and Release Agreement provided to Mr. Tanase on May 16, 2023, confirms that he was terminate as opposed to him resigning. Ex. 1 ¶17.

2.   The May 31, 2023 Phone Call

Ms. Webb falsely and inaccurately recounts the May 31, 2023 phone call between herself and Mr. Tanase. Mr. Tanase never threatened to "bury Tom" or to get "revenge". *See* Ex. 1 ¶10.

Likewise, Mr. Tanase never stated that he had spoken to reporters at CNBC. *See* Ex. 1 ¶11. To this day, Mr. Tanase has never spoken to any reporter at CNBC or with any other member of the media concerning the subject matter of the Complaint, the EEOC charges against the Company, his wrongful termination, or any financial, mismanagement or other wrongdoings by the Company. Indeed, as of this date, Mr. Tanase has not spoken or communicated with any third party, other than his legal counsel, about the subject matter of the Complaint, the EEOC charges against the Company, his wrongful termination, or any financial, mismanagement or other wrongdoings by the Company. *See* Ex. 1 ¶12, 30-32.

4

During the May 31, 2023 phone call with Ms. Webb, Mr. Tanase did say that he would seek retribution against the Company for age discrimination and wrongful termination. However, this statement was in context of filing a proper Charge of Discrimination against the Company. *See* Ex. 1 ¶20.  It is within this context that Mr. Tanase stated that he has not talked to Mr. Dowe, but it is an avenue that he might pursue. *See* Ex. 1 ¶20.

C.     <u>Plaintiff Cannot Prove That Mr. Tanase Accessed The CEO's Email Without Authorization</u>

Plaintiffs' allegations against Mr. Tanase regarding him accessing the CEO's email without authorization rely on supposition and unfounded assumptions.  Plaintiffs' Exhibit 2, Exhibit C allegedly identifies multiple logins into the CEO's email from Mr. Tanase.  It does so by identifying 2FA Device IP and the Access Device IP.  All of the login's shown on Exhibit 2, Exhibit C are from the time period prior to Mr. Tanase's wrongful termination.  The 2FA Device IP identifies the actual device that was being used to log in with.

Comparatively, Plaintiffs' Exhibit 3, Exhibit D, which allegedly covers the time period after Mr. Tanase was wrongfully terminated, only shows the Access Device IP.  It does not contain the 2FA Device IP, which means that the Company cannot demonstrate that the actual device that used being used to log in with belonged to Mr. Tanase.  As a technical matter without the 2FA Device IP the log in cannot be linked to a specific device or individual. Access Device IP addresses can be easily spoofed or manipulated.  This is evidence by the fact that Plaintiffs' Exhibit 3, Exhibit D shows the various Access Device States, including multiple Virginia locations, multiple North Carolina locations and multiple Connecticut locations, but only a single Florida location which is where the CEO actually resides.

Furthermore, Mr. Tanase was never provided with an unredacted copy of   Plaintiffs' Exhibit 3, Exhibit C or D and is therefore unable to verify or contest the information set forth

therein. A Temporary Restraining Order should no be granted based on secret information that is not subject to challenge or even review by the party that the Temporary Restraining Order is sought against.

Plaintiff's evidence against Mr. Tanase, at this stage of the proceedings, makes unreliable assumptions, guesses and draws inferences without actual proof of any wrongdoing by Mr. Tanase.

D.      The Dell XPS Laptop Was Not Accessed Without Authorization

Starting on June 6, 2023, I contacted Kim Estep, Manager of Support, and Ted Atkinson systems Engineering & Manager, for assistance in removing my personal information and documents from the Dell XPS Laptop before returning it to the Company. *See* Ex. 1 ¶21. The Dell XPS Laptop contained numerous personal, private and confidential information on mine, including pictures, records from my divorce proceedings, financial information, etc.  These documents had nothing to do with the Company.  *See* Ex. 1 ¶22.  Mr. Tanase explained to Ms. Estep and Mr. Atkinson his desire to remove his personal information, but that he was not able to access the laptop.  *See* Ex. 1 ¶23.  They discussed potential solutions and workarounds. *See* Ex. 1 ¶23.  Mr. Tanase ultimately decided that the best course of action was to install a new operating system, to download all files to an external drive, wipe the Dell XPS Laptop and then upload the Bowlero files.  *See* Ex. 1 ¶23-24.  Neither Ms. Estep or Mr. Atkinson advised Mr. Tanase to not access the laptop to remove his personal information. *See* Ex. 1 ¶24.  Mr. Tanase used the above described procedure to remove his personal information from the Dell XPS Laptop and did so with the full knowledge of the Company. *See* Ex. 1 ¶24.  Any Bowlero files remaining on the external drive have not been shared with any third party and have not been accessed since

downloaded. *See* Ex. 1 ¶25.  Since Mr. Tanase's wrongful termination he has not shared or distributed any confidential and/or proprietary documents to any third party. *See* Ex. 1 ¶30-32.

E.	There Is No Threat Of Mr. Tanase's Disclosure Of Confidential Information

Since Mr. Tanase's wrongful termination he has not shared or distributed any confidential and/or proprietary documents to any third party.  *See* Ex. 1 ¶30-32.  Mr. Tanase has never possessed any knowledge of the Company's attorney/client communications, work product or legal strategy.  *See* Ex. 1 ¶26.

However, prior to Mr. Tanase's wrongfuly termination, and especially once the CNBC[3] article was published it was a common subject of discussion around the office, including numerous occasions where Mr. Shannon and Mr. Parker publicly insulted in Mr. Dowe and made other disparaging remarks regarding the EEOC claim. *See* Ex. 1 ¶27.   The suggestion that Mr. Tanase learned of Mr. Dowe through unauthorized access to the CEO's emails is absurd, when he was referred to in the CNBC news article and was publicly insulted inside the Company's headquarters.

Plaintiff has not identified a single third party who Mr. Tanase has or intends to disclose any confidential information to.

## LEGAL STANDARD

To prevail on a TRO or a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits of its claims; (2) a likelihood of irreparable harm in the absence of the requested preliminary relief; (3) that the balance of equities favors the plaintiff; and (4) that an injunction is in the public interest. *Kira (US) Inc. v. Samman*, Civil Action No. 1:23-cv-919

---

[3] https://www.cnbc.com/2023/05/11/bowlero-bowl-faces-dozens-of-eeoc-discrimination-claims.html

(MSN/WEF), 2023 U.S. Dist. LEXIS 126314, at *7 (E.D. Va. July 21, 2023) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021)). A TRO "preserve[s] the status quo only until a preliminary injunction hearing can be held." *Id (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d 411, 422 (4th Cir. 1999). A TRO is a drastic remedy intended to preserve the status quo until the Court can hold a hearing on motion for a preliminary injunction. *Id.*

A.     There Is No Irreparable Injury Absent Injunctive Relief

As discussed above, there is no "revenge" plot being implemented by Mr. Tanase. Plaintiff's claim are based on a falsehood as Mr. Tanase never said he would bury Mr. Shannon and never said he was seeking revenge.

Additionally, if Mr. Tanase wanted revenge and to buy Mr. Shannon then he would have given CNBC damaging information based on his 21 years at the Company, including overt and coded racism and sexism by the Company's executives, details of Mr. Shannon pornography habits, and damaging information concerning lack of financial controls at the Company. None of that information arose or is related in any way to the alleged confidential information Mr. Tanase accessed or possessed. Mr. Tanase has not done any media interview and has not disclosed any information to any third party.

Plaintiff has not put forth any evidence that there is any intention, or plan of Mr. Tanase to disseminate any of the alleged confidential information that he allegedly possess. Mr. Tanase is not being accused of talking to competitors, possessing valuable trade secrets, etc.

There is no likelihood of irreparable harm in the absence of the requested preliminary relief. Further, the cases cited by Plaintiff, such as *Microsoft Corp. v. Does*, Civil Action No.

8

1:21-cv-822 RDA/IDD, 2022 U.S. Dist. LEXIS 236135, at *4 (E.D. Va. Dec. 27, 2022), are addressing situations where there was ongoing unauthorized access and computer attacks by unknown third parties. That is not the situation in this case. The Plaintiffs admit that they have revoked any credentials that Mr. Tanase possessed including those to the CEO's emails, and that the alleged confidential information on the Dell XPS laptop was already there prior to Mr. Tanase's wrongful termination. There is no ongoing likelihood of irreparable injury.

Further, legal remedies exist. Unlike in *Microsoft Corp. v. Does,* Mr. Tanase's identity is known, and he is defending against the legal claims. 2022 U.S. Dist. LEXIS 236135(E.D. Va. Dec. 27, 2022).

B.     Bowlero Is Not Likely to Prevail On The Merits Of Its Claims

    1.     There Is No Proof That Mr. Tanase Violated The Computer Fraud And Abuse Act

As set forth above in detail, there is no evidence that Mr. Tanase violated the Computer Fraud and Abuse Act, as any alleged access to the CEO's emails cannot be linked to Mr. Tanase. Also, as set forth in detail above, Mr. Tanase, accessed and downloaded information from the Dell XPS laptop with the full knowledge of Plaintiff. Therefore, by definition there can be no unauthorized accessed.

    2.     There Is No Proof That Mr. Tanase Violated The Virginia Computer Crimes Act

As set forth above in detail, there is no evidence that Mr. Tanase violated the Virginia Computer Crimes Act, as any alleged access to the CEO's emails cannot be linked to Mr. Tanase. Also, as set forth in detail above, Mr. Tanase, accessed and downloaded information from the Dell XPS laptop with the full knowledge of Plaintiff. Therefore, by definition there can be no unauthorized accessed.

    3.     There Is No Evidence That Mr. Tanase Breached The Employment Agreement

As set forth above, there is no evidence that Mr. Tanase disclosed any confidential information or has any intention of disclosing it in the future. Therefore, there is no breach of the Employment Agreement.  Mr. Tanase downloaded the information from the Dell XPS laptop with the knowledge of Company and therefore that does not constitute a breach of the Employment Agreement.

4.     Mr. Tanase Did Not Commit Trespass To Chattels

As set forth above in detail, there is no evidence that Mr. Tanase committed Trespass to Chattels, as any alleged access to the CEO's emails cannot be linked to Mr. Tanase.  Also, as set forth in detail above, Mr. Tanase, accessed and downloaded information from the Dell XPS laptop with the full knowledge of Plaintiff.  Therefore, by definition there is no trespass.

C.     The Public Interest Would Not Be Served By A Preliminary Injunction

As set forth above, the public interest would not be served by a preliminary injunction, as it is an overly broad and premature attempt to silence Mr. Tanase and impair his EEOC and other potential claims against the Company.

**THE REQUEST FOR RELIEF IS OVERLY BROAD AND DOES NOT PROTECT MR. TANASE'S LEGITIMATE INTEREST**

Plaintiff's request for relief makes four separate requests for relief, which are addressed below, each of which are overly broad and fail to protect the legitimate interests of Mr. Tanase:

A.     Request To Refrain From Accessing Or Extracting Data

Plaintiff's request an order requiring that Mr. Tanase refrain from accessing or extracting any data from Bowlero's computers, systems, or other data.  Not only is there no evidence of any ongoing attempt to access or extract any data from Bowlero's computers, systems, or other data,

but to the extent that such actions are impermissible they are prohibited by existing law making the entry of any order containing such a prohibition wholly unnecessary.

B.      Refrain From Disclosing Proprietary and Confidential Information

Plaintiff's request an order requiring that Mr. Tanase refrain from disclosing to any third party, any proprietary material or confidential information. Initially, it must be noted that such request is improper as Mr. Tanase has not made any disclosure to third parties and there is no evidence he has any intention of doing so.

Additionally, such a request for relief is overly broad and not appropriately tailored. First, the request is not limited to the alleged proprietary material or confidential information that is at issue in this matter.  The knowledge in Mr. Tanase's head from his years of service, the behaviors he witnessed, and his knowledge of wrongdoing by the Company should be exempt from any such order. Second, if the Court were inclined to grant such relief there are certain exceptions that should apply.  They are as follows: (a) Complying with a valid subpoena, Court Order, Administrative Order or other legal requirement for disclosure of proprietary material or confidential information; (b)  Reporting a possible violation of law to a governmental entity or law enforcement, including making a disclosure that is protected under the whistle blower protections of applicable law; and (c) As necessary in bringing and prosecuting claims that Mr. Tanase has against AMF Bowling Centers, Inc. or Bowlero Corp., including those to be brought before the EEOC.

       3.      Identify Any Person To Whom Disclosures Of Proprietary Material Or Confidential Information Have Been

Plaintiff's request an order requiring that Mr. Tanase identify, in writing and under oath, the identify of any persons or entities to which they disclosed any proprietary material or

11

confidential information. First, as noted above, the request is not limited to the alleged proprietary material or confidential information that is at issue in this matter and therefore is overly broad. Second, Mr. Tanase has already attested that the has not disclosed any proprietary material or confidential information and therefore this request is moot.

4. <u>The Devices</u>

Plaintiff's request an order requiring that Mr. Tanase make all devices within his possession, custody and/or control, which contain or ever have contained proprietary material or confidential information belonging to AMF Bowling Centers, Inc. or Bowlero Corp. available for Bowlero Corp.'s inspection. To the extent the Court is inclined to grant such request, and to the extent that such request is otherwise properly made in discovery, procedures and protocols need to be established that protected Mr. Tanase's personal and confidential information, as well as attorney/client privileged communications, work product, etc. At a minimum the Court, should it grant such relief, should require that:

(a) The parties shall enter into an appropriate Protective Order protecting (1) Mr. Tanase's personal and confidential information from disclosure; (2) any attorney/client communications from disclosure and (3) any attorney work product documents or information from disclosure. Nothing shall constitute a waiver or attorney/client privilege and/or the work product doctrine. The intent is to provide for reasonable and necessary protections to avoid the disclosure of information protected by the attorney/client privilege and/or the work product doctrine.

(b) The parties shall negotiate in good faith and enter into an electronically stored information ("ESI") plan. Pursuant to the ESI Plan, AMF Bowling Centers, Inc. and Bowlero Corp. shall provide file hashtags and/or search terms. Mr. Tanase, through Counsel shall have

12

an opportunity to review and if necessary object to any such file hashtags and/or search terms. Once the list of files has been generated, Counsel for Mr. Tanase shall have the opportunity to review such files and remove any documents that are protected by the attorney/client privilege and/or the work product doctrine. Any such files shall be appropriately identified in a privilege log. Only then shall the files be produced to AMF Bowling Centers, Inc. and Bowlero Corp.

## CONCLUSION

For the above reasons, Mr. Tanase requests that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction be denied with prejudice, and for any and all such other relief that is in the interests of justice. In the alternative, and to the extent this Court grants any part of the Motion the relief should be appropriately tailored as specified above.

>                              Respectfully Submitted
>                              Thomas Tanase
>                              *By Counsel*

Dated: July 25, 2023

_____/s/_____
Jay Ian Igiel, Esq.. (VSB#65576)
Robert B. Nealon, Esq. (VSB#23096)
NEALON & ASSOCIATES, P.C.
119 North Henry Street
Alexandria, Virginia 22314
Phone: (703) 684-5755
Fax: (703) 684-0153
Email: jigiel@nealon.com
Email: rbnealon@nealon.com
*Counsel For Defendant*

13

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 25th Day of July, 2023 a copy of the foregoing will be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Randy C. Sparks, Jr.
    Catrina C. Waltz
    KAUFMAN & CANOLES, P.C.
    1021 East Cary Street, Suite 1400
    Richmond, VA 23219
    rcsparks@kaufcan.com
    ccwaltz@kaufcan.com

    Alexander Benjamin Spiro
    Daniel Sisgoreo
    Hope Delaney Skibitsky
    Quinn Emanuel Urquhart & Sullivan, LLP (NY-NA)
    51 Madison Ave
    22nd Floor
    New York, NY 10010
    alexspiro@quinnemanuel.com
    danielsisgoreo@quinnemanuel.com
    hopeskibitsky@quinnemanuel.com

    Asher Griffin
    Quinn Emanuel Urquhart & Sullivan, LLP
    300 W. 6th Street
    Suite 2010
    Austin, TX 78701
    737-667-6100
    ashergriffin@quinnemanuel.com

    Michael Edmund Shaheen
    Quinn Emanuel Urquhart & Sullivan LLP (DC-NA)
    1300 I Street NW
    Suite 900
    Washington, DC 20005
    michaelshaheen@quinnemanuel.com

Neil Shantaram Talegaonkar
Kaufman & Canoles
1021 East Cary Street
Suite 1400
Richmond, VA 23219-4058
nstalegaonkar@kaufcan.com

                                                   /s/
                               Jay Ian Igiel (VSB No. 65576)
                               NEALON & ASSOCIATES, P.C.
                               119 North Henry Street
                               Alexandria, VA 22314
                               Tel: (703) 684-5755
                               Fax: (703) 684-015
                               Email: jigiel@nealon.com
                               *Counsel For Defendant*