UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| AMF BOWLING CENTERS, INC., *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THOMAS TANASE )<br>)<br>Defendant. )<br>) | Civil Action No. 3:23cv448 |

**Affidavit Of Thomas Tanase**

I, Thomas Tanase, do declare under penalty of perjury that the following are true and correct to the best of my information and belief.

1. I have personal knowledge of the information contained in this Affidavit and, if called upon to do so, could and would competently testify to the matters set forth in this Affidavit.

2. I am over the age of 18 and am of sound mind and body.

3. I was hired by Strike Holdings, LLC, a predecessor of Bowlero on June 10, 2002, as Senior Vice President of Information Technology. As a result of my tireless and dedicated service I ultimately became Bowlero's Chief Information Officer (CIO), which is the position I held at the time of my wrongful termination on May 16, 2022.

4. I never resigned from my position as CIO. I was wrongfully terminated.

5. Prior to the May 15, 2023, verbal dispute with my supervisor Lev Ekster, I had raised complaints regarding his behavior and treatment of me and my staff to the former president Brett Parker, as well as the head of human resources for the Company. Based on my 21 years' experience at Company and my intimate knowledge of the manner in which the current

1

management operated and their patterns and practices, I believed that they were trying to either create a pretext to terminate me or force me to resign.

6. On May 15, 2023, I had a verbal dispute with Mr. Ekster. Based on my knowledge of Bowlero's pattern and practice of conducting business, I believe that Mr. Ekster was trying to create a pretext for my termination or was trying to force me to resign. I never told Mr. Ekster that I resigned. I did make a statement to Mr. Ekster to the effect that if he was trying to get my resignation, he would have to do it himself and resign me. I had no intention of resigning and desired to finish my career with the Company.

7. On May 16, 2023, I reported to work in the morning as normal and participated in three meetings before being called by Human Resources, at which time I was wrongfully terminated.

8. On May 16, 2023, I repeatedly and in writing denied to Heather Webb, Vice President of Human Resources, that I resigned.

9. A true and correct copy of two email chains between me and Ms. Webb on May 16, 2023, are attached hereto as Exhibit A and B.

10. On the May 31, 2023, phone call with Ms. Webb, I never threatened to "bury Tom" or get "revenge."

11. During said call, I never stated that I had already spoken to reporters at CNBC.

12. I have never spoken to any reporter at CNBC or with any other member of the media concerning the subject matter of the Complaint, the EEOC charges against the Company, my wrongful termination, or any financial, mismanagement or other wrongdoings by the Company.

13. During the call, I never stated that I had already spoken with Daniel Dowe.

14. As of May 31, 2023, I had never spoken or otherwise communicated with Mr. Dowe.

15. I did not reach out to Mr. Dowe until approximately June 11, 2023.

16. On May 16, 2023, when I was wrongfully terminated, Ms. Webb sent me a proposed Separation and Release Agreement.

17. A true and correct copy of said Separation and Release Agreement is attached hereto as Exhibit C.

18. The Separation and Release Agreement states that AMF is "terminating Employee's employment", not that I had resigned.

19. I had previously rejected the Separation and Release Agreement provided to me at the time of my wrongful termination and had been in the process of negotiating improved terms. I had 4-5 calls with Mr. Parker regarding my proposed severance package, which resulted in improved, although ultimately inadequate, offers from the terms set forth in the Separation and Release Agreement.

20. During the May 31, 2023 phone call with Ms. Webb, I did say that I would seek retribution against the Company for their wrongful treatment of me. However, this statement was in context of filing a proper Charge of Discrimination against the Company. It is within this context that I stated that I have not talked to Mr. Dowe, but it is an avenue that I might pursue.

21. Starting on June 6, 2023, on several occasions I contacted by phone Kim Estep, Manager of Support, and Ted Atkinson Systems Engineering & Manager, for assistance in removing my personal information and documents from the Dell XPS Laptop before returning it to the Company.

22. The Dell XPS Laptop contained numerous personal, private and confidential information of mine, including pictures, records from my divorce proceedings, financial information, etc. These documents have nothing to do with the Company.

23. I explained to Ms. Estep and Mr. Atkinson my desire to remove my personal information, but that I was not able to access the laptop. We discussed potential solutions and workarounds. I ultimately decided that the best course of action was to install a new operating system, to download all files to an external drive, wipe the Dell XPS Laptop and then upload the Bowlero files.

24. I used the above described procedure to remove my personal information from the Dell XPS Laptop and did so with the full knowledge of the Company.

25. Any Bowlero files remaining on the external drive have not been shared with any third party and have not been accessed since downloaded.

26. I have never possessed any knowledge of the Company's attorney/client communications, work product or legal strategy.

27. Prior to my wrongful termination, and especially once the CNBC[1] article was published, it was a common subject of discussion around the office, including numerous occasions where Mr. Shannon and Mr. Parker publicly insulted Mr. Dowe and made other disparaging remarks regarding the EEOC claims, including disparaging remarks about the EEOC to create an aura within the company of it being an incompetent agency notwithstanding the EEOC's two decisions against the Company that it violated federal anti-discrimination laws on a nationwide basis which continues and that it assessed damages of $60 million against the company based on evidence showing egregious conduct.

---

[1] https://www.cnbc.com/2023/05/11/bowlero-bowl-faces-dozens-of-eeoc-discrimination-claims.html

28. Prior to my wrongful termination, Bowlero had serious issues involving accounting controls and operational weaknesses. It was my job as CIO per Mr. Parker to correct and conceal these weaknesses so that the company could be in SOX compliance as required by the SEC.

29. Prior to my wrongful termination, and initiated by Mr. Shannon, I have witnessed over 20 years of personally vindictive, demeaning and retaliatory conduct against any person once they left the employment of the Company, or in the case of Mr. Dowe or the EEOC where they have challenged the Company even on a meritorious legal basis. This lawsuit is one instance of this culture of making personal attacks publicly and retaliation to force me to sign a severance agreement to silence my knowledge of problems within the Company and matters of personal embarrassment to Mr. Shannon.

30. Since my wrongful termination, I have not shared or distributed any confidential and/or proprietary documents to any third party.

31. Since my wrongful termination, I have not spoken or communicated with any member of the media.

32. Since my wrongful termination, I have not spoken or communicated with any third party, other than my legal counsel, about any matter that is the subject of the Complaint.

## DECLARATION

Pursuant to 28 § U.S.C. § 1746, I hereby declare under penalty of perjury laws of the United States of America that the foregoing is true and correct.

Executed this 24ʰ day of July, 2023.

_____
Thomas Tanase

5

**Jay Igiel**

| | |
|---|---|
| **From:** | tom@touch2000.com |
| **Sent:** | Tuesday, May 16, 2023 2:23 PM |
| **To:** | 'Webb, Heather' |
| **Subject:** | RE: Bowlero Information |

I have no record that Lev actually called me but as you can see I was waiting to talk to him.
I never told anyone anything about resigning. It is not too late to say it was a misunderstanding and we move on.



Regards,
Tom Tanase

**From:** Webb, Heather <HWebb@BowleroCorp.com>
**Sent:** Tuesday, May 16, 2023 12:05 PM
**To:** tom@touch2000.com
**Subject:** Bowlero Information

Hi Tom,

Attached is the severance agreement discussed during the call and the termination sheet related to company benefits. Please do not hesitate to reach out with questions.

Thank you and we wish you the best.

Heather Webb
Vice President of Human Resources
Bowlero Corp

222 West 44th Street, New York, NY 10036
O | 303-379-9685

Exhibit A



Exhibit A

**Jay Igiel**

| | |
|---|---|
| From: | tom@touch2000.com |
| Sent: | Tuesday, May 16, 2023 3:47 PM |
| To: | 'Webb, Heather' |
| Cc: | bparker@bowlerocorp.com tshannon@bowlerocorp.com |
| Subject: | RE: [EXTERNAL] RE: Bowlero Information |

That is untrue and unfortunate. I will be in touch.

Regards,
Tom Tanase

**From:** Webb, Heather <HWebb@BowleroCorp.com>
**Sent:** Tuesday, May 16, 2023 3:45 PM
**To:** tom@touch2000.com
**Cc:** bparker@bowlerocorp.com tshannon@bowlerocorp.com
**Subject:** RE: [EXTERNAL] RE: Bowlero Information

Hi Tom,

Your email below is inconsistent with what you had previously acknowledged. You had confirmed that you had communicated your resignation from the Company yesterday. The Company has already accepted your resignation, which we will deem effective as of today (5/16).

We wish you nothing but the best in your future.

One item we will need to coordinate is receiving all of the items you have in your office. Please let me know if there is an evening that works best for you to come in or we can pack them and ship them to you – whichever is easiest.

Thank you,

Heather Webb
Vice President of Human Resources
Bowlero Corp

222 West 44th Street, New York, NY 10036
O | 303-379-9685



**From:** tom@touch2000.com <tom@touch2000.com>
**Sent:** Tuesday, May 16, 2023 10:51 AM
**To:** Webb, Heather <HWebb@BowleroCorp.com>
**Cc:** bparker@bowlerocorp.com tshannon@bowlerocorp.com
**Subject:** [EXTERNAL] RE: Bowlero Information

1

Exhibit B

> NOTICE: This email was sent from someone outside of Bowlero Corp. Always use caution when opening attachments or clicking links in any emails. Before doing so, it is important that you are expecting an attachment or link from that person and have verified the sender's display name and email address match what is expected from that sender. If you are unsure, contact the Bowlero Corp IT Support Desk.

Heather,

I maintain that I did not quit nor did I give Lev my resignation. The fact that I have been on meetings all day speaks for itself. I am willing to put this behind us and continue making this company successful. Please advise as to how we can proceed.

Regards,
Tom Tanase

---

**From:** Webb, Heather <HWebb@BowleroCorp.com>
**Sent:** Tuesday, May 16, 2023 12:05 PM
**To:** tom@touch2000.com
**Subject:** Bowlero Information

Hi Tom,

Attached is the severance agreement discussed during the call and the termination sheet related to company benefits. Please do not hesitate to reach out with questions.

Thank you and we wish you the best.

---

Heather Webb
Vice President of Human Resources
Bowlero Corp

222 West 44th Street, New York, NY 10036
O | 303-379-9685



NOW PUBLICLY TRADED — SYMBOL BOWL

2

Exhibit B

# CONFIDENTIAL SEPARATION AND RELEASE AGREEMENT

This Confidential Separation and Release Agreement (the "Agreement") is between Thomas Tanase ("Employee") and AMF Bowling Centers Inc. dba Bowlmor AMF Centers ("BOWLMOR AMF" or "Company"). BOWLMOR AMF is terminating Employee's employment. BOWLMOR AMF is providing benefits to Employee in consideration for his/her promises in this Agreement. Therefore, for valuable consideration, the parties agree as follows:

1. <u>Termination</u>. The effective date of termination of Employee's employment is May 16, 2023 ("Separation Date").

2. <u>Severance</u>. In consideration of Employee's promises, including the release set forth herein, BOWLMOR AMF will pay Employee severance to which he/she would not otherwise be entitled equal to $60,259.20 U.S. DOLLARS, less standard withholdings and deductions ("Separation Payment"). BOWLMOR AMF shall report said payment to the Internal Revenue Service and all applicable state or local taxing authorities by means of a Form W-2 as regular wages to Employee. Such Separation Payment will be made within ten (10) days following the receipt of an original of this Agreement executed by Employee. Such Separation Payment will not be considered compensation for purposes of any employee benefit plan, program, policy or arrangement maintained or hereafter established by Company or any of its affiliates. The Employee acknowledges that the Separation Payment represents consideration for signing and abiding by this Agreement, including the Release, and is not salary, wages or benefits to which Employee was already entitled. Company specifically acknowledges that the Employee may be entitled to COBRA continuation of health insurance benefits and, if so, the appropriate notice of right to elect will be provided.

The Employee acknowledges and agrees that Employee will not be eligible for any other compensation, bonus, insurance coverage, pay, or benefits (cash or non-cash) from Company, related to Employee's employment, whether before or after the Separation Date. The Employee understands that Employee shall not accrue vacation, sick or personal days after the Separation Date. The Employee waives and forever discharges Company from any liability for any payment or benefits of any kind which might otherwise be payable as a result of Employee's employment with Company or termination thereof, it being the intention of the parties to convert and merge all such claims and rights into this Agreement. The Employee understands and agrees that this Agreement does not abrogate or modify any obligations (including payment obligations) owed by the Employee to the Company which arises from any action prior to the Separation Date.

3. <u>Release</u>. Employee, on behalf of himself/herself and his/her heirs, executors, administrators, trustees, legal representatives and assigns, unconditionally and forever releases, discharges and waives ("Release") any and all claims, judgments, disputes, demands, counterclaims, liabilities, obligations, complaints, charges, damages, debts, dues, orders, suits or causes of action of any nature whatsoever, whether legal, equitable or otherwise (collectively, "Claims") , which he/she may have had or may now have, whether known or unknown, against BOWLMOR AMF, its subsidiaries and affiliates (including, without limitation, its direct and indirect parents) and each of their respective past, present or future employees, officers, directors, stockholders, representatives, agents, insurers, attorneys, customers, vendors, successors and assigns (collectively, "Released Parties") arising at any time on or before Employee's execution of this Agreement. Except as provided herein, this Agreement is a release of all Claims of any nature whatsoever that Employee has against the Released Parties including any claims, demands, causes of action, liabilities whether known or unknown, and caused by, arising from or related to Employee's employment relationship with BOWLMOR AMF, his/her separation from employment, including, but without limitation, any and all alleged discrimination or acts of discrimination which occurred or may have occurred on or before Employee's execution of this Agreement based upon race, color, sex, creed, national origin, age, disability or any other violation of any Equal Employment Opportunity Law, ordinance, rule, regulation or order, including, but not limited to, the Age Discrimination Employment Act of 1967, as amended by the Older Workers Benefit Protection Act; any exception to the employment at will doctrine, including any common law theory sounding in tort, contract or public policy; any Claim under

provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. Section 201, et seq., or any state or local wage and hour law or ordinance; any Claim under the National Labor Relations Act, as amended, 29 U.S.C. Subsection 141, et seq.; any Claim under any state "service letter" statute; any common law theory of recover; Claims under Continuation Coverage Under Group Health Plans (commonly referred to as "COBRA") contained in 29 U.S.C. Title I, Subtitle B., Part 6 (of the Employee Retirement Income Security Act of 1974, as amended) and Section 4980B of the Internal Revenue Code of 1986, as amended, except as expressly set forth above; Claims under the Employee Retirement Income Security Act of 1974 (commonly referred to as "ERISA"), as amended; Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; claims under the Employee Retirement Income Security Act of 1974, as amended; the Family and Medical Leave Act of 1993; any other federal or state law or regulation relating to wages, hours of work, overtime pay, pay practices, rest and meal periods and penalties; state workers' compensation laws; or any other federal, state or local laws or regulations regarding employment discrimination, employment or termination of employment.  This Release also includes claims for wrongful discharge, breach of express or implied contract, defamation, fraud, harassment or misrepresentation under any statute, rule, regulation or under the common law.  Notwithstanding the above, this Release shall not be construed to extend to any claim for retirement benefits under any pension, retirement, or retirement savings plan in which Employee is a participant by virtue of his/her employment, to benefit claims under any employee welfare benefit plan based on events occurring after Employee's execution of this Release, or to any claims that cannot be released as a matter of law or public policy.

      3. <u>Waiver of Civil Code section 1542 rights</u>.  Employee also specifically acknowledges that he/she is aware of and expressly waives all rights and benefits conferred on Employee now or in the future under the provisions of California *Civil Code* Section 1542, or any similar state provision, which provides, in effect or verbatim, as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Employee, being aware of this section, hereby relinquishes all rights and benefits he may have based thereon and upon any other statutes or common law principles of similar effect.

Employee does not waive any rights or claims that may arise after the date this Agreement is executed.

      4. <u>No Filing of Claim</u>. The Employee warrants, with the understanding that such warranty is material to this transaction, that (a) the Employee has not asserted, and no person or entity has asserted on the Employee's behalf, any Claim, demand, cause of action or lawsuit arising out of or related in any way to the Employee's employment with Company or regarding any of the Released Parties herein and (b) the Employee has not assigned, pledged, hypothecated or transferred any Claim purported to be released hereby.  The Employee specifically agrees that the Employee will not, directly or indirectly, in the future file any Claim based on actions or omissions released herein against Company or any of the Released Parties, with any court or in any proceeding; nor will the Employee, directly or indirectly, file any Claim seeking individual relief with any local, state or federal governmental agency; provided, however, the foregoing shall not apply to any claims that cannot be released as a matter of law or public policy.  Notwithstanding anything to the contrary herein, nothing in this Agreement shall be construed to prohibit you from filing a charge with or participating in any investigation or proceeding conducted by a federal or a comparable state or local agency as required by governmental authority.  Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf.   The Employee shall indemnify and hold Released Parties harmless from and against any and all loss, liability, claim, damage (including incidental and consequential damages) or expense (including costs of investigation and defense and reasonable attorney's fees) whether or not involving third party claims, arising directly or indirectly from or in connection with (i) the assertion by or on behalf of Employee of any Claim or other matter purported to be released pursuant to this Release and (ii) the assertion by any third party of any Claim or demand against any Released Parties which

Claim or demand arises directly or indirectly from, or in connection with, any assertion by or on behalf of the Employee against such third party of any Claims or other matters purported to be released pursuant to this Release.

      5.    <u>Costs and Expenses Recovery</u>. The Employee agrees that if the Employee does, directly or indirectly, file any Claim, complaint, charge or lawsuit in violation of Section 4 above, then Company and/or any of the Released Parties, as applicable, shall be entitled to recover from the Employee the entire amount of the Separation Payment described above, as well as its/their costs and expenses incurred in defense of such complaint, charge or lawsuit, including reasonable attorneys' fees.  Further, in the event it becomes necessary for Company or any of the Released Parties to bring legal action to enforce the terms hereof, whether for injunctive relief or damages or both, the Employee agrees that in the event Company and/or any of the Released Parties prevails in such action, in whole or in part, Company and/or any of the Released Parties, as applicable, shall be entitled to recover from the Employee its/their costs and expenses incurred in such action, including reasonable attorneys' fees.

      6.    <u>Review Period</u>.  Employee confirms that he/she has been given twenty-one (21) days to review and consider the Agreement before signing it.  Employee understands that he/she may use as much or as little of the period as she wishes prior to signing the Agreement.

      7.    <u>Revocation Period</u>.  To the extent Employee is afforded any rights under, and in order to comply with the provisions of, the Older Workers Benefits Protection Act (29 U.S.C. Section 626(f)) and to effectuate the release by Employee of any potential claims under the Federal Age Discrimination In Employment Act to the extent applicable to Employee, Employee agrees as follows in this Section 7:  Employees specifically acknowledges that he/she is waiving and releasing any rights he/she may have under the Age Discrimination In Employment Act of 1967 ("ADEA") and that this waiver and release is knowing and voluntary.  Employee acknowledges that the consideration given for this waiver and release is in addition to anything of value to which she was already entitled.  Employee acknowledges that he/she has carefully reviewed the Agreement and understands the terms and conditions it contains.  By entering into the Agreement he/she is giving up potential legal rights and he/she intends to be bound by all the terms and conditions set forth in the Agreement.  Employee does not waive rights or claims that may arise after the date the Agreement is executed.  He/She is entering into the Agreement freely, knowingly and voluntarily.  He/She acknowledges that she has been advised to consult legal counsel before executing the Agreement.  Within seven (7) calendar days of the date of his/her signature, **Employee may revoke the release and waiver of any rights he/she may have under the ADEA only to the extent applicable,** and the Agreement shall not be effective as to the waiver and release of any rights he/she may have under the ADEA until this seven-day revocation period has expired.  Revocation must be made by delivering a written notice of revocation to the Vice President of Human Resources, at 222 West 44th Street, New York, NY  10036, which must be received no later than the close of business on the seventh (7th) calendar day (or next business day thereafter, if the seventh calendar day is not a business day) after Employee signs this Agreement.

      8.    <u>Post Separation</u>.  After the Separation Date, Employee will not (A) disclose any secret or confidential information, knowledge or data relating to BOWLMOR AMF or its business that is not public knowledge (except as required by law or to his/her accountant or attorney) or that BOWLMOR AMF paid him/her the Separation Payment, (B) make any disparaging, derogatory, negative or similar remarks, comments or statements, orally, in writing or through any internet media source (such as Facebook, Twitter or otherwise) about or in any way in reference to BOWLMOR AMF, its centers, officers, employees or affiliates, subject to Section 4.  Employee shall not engage in any unlawful or tortious business interference or similar unlawful conduct, directly or indirectly, through efforts to solicit, induce, recruit, or encourage any other employees or agents of BOWLMOR AMF to terminate their employment agency relationship with BOWLMOR AMF.  Employee further agrees not to engage in any unlawful or tortious business interference or similar unlawful conduct, directly or indirectly, through efforts to divert or interfere with any BOWLMOR AMF's customers or business partners from conducting any business with the BOWLMOR AMF. Further, Employee shall continue to be bound by his/her

prior agreement and obligations owed to BOWLMOR AMF which survive termination of employment, restated and incorporated herein, including those obligations not to use, disclose or exploit any confidential or sensitive information regarding BOWLMOR AMF or concerning anyone else having worked with or for BOWLMOR AMF or currently working with or for BOWLMOR AMF.

  9. <u>Waiver of Future Employment.</u>  Employee will neither apply for employment with BOWLMOR AMF or any related entity nor seek reinstatement as an independent contractor of BOWLMOR AMF, or any BOWLMOR AMF related entity under common control, without a specific written invitation from BOWLMOR AMF.  The execution of this Agreement shall be good and sufficient cause to reject any application for employment or engagement with BOWLMOR AMF or any BOWLMOR AMF related entity under common ownership or control.  Notwithstanding anything herein to the contrary, this Section shall not apply to the extent prohibited by applicable law.

  10. Verification of Employment.  BOWLMOR AMF agrees that if contacted by a prospective employer of Employee or other third party, it will only verify and/or provide Employee's final job title and dates of employment.

  11. <u>Confidentiality</u>.  Employee agrees not to disclose the existence or terms of this Agreement to any person other than Employee's lawyer, accountant, income tax preparer, spouse or children (if any), except pursuant to written authorization by Employer or as compelled by law, and that Employee will be responsible for any further disclosure of such information made by such persons.  However, this Agreement may be used as evidence in any subsequent proceeding alleging its breach.  Also, Employee may state that matters with respect to his/her termination have been resolved.

  12. <u>Non-Admission of Liability</u>.  The parties hereto acknowledge the execution of this Agreement, and each of the terms contained herein, is not, and shall not be construed in any way as an admission of wrongdoing or liability on the part of either party hereto.

  13. <u>BOWLMOR AMF Property</u>.  Employee will immediately return to BOWLMOR AMF all equipment and materials received by her in the course of her employment, including any computer, printer and fax machine, all paper and electronic documents including memoranda, customer lists, marketing materials, reports and analyses.

  14. <u>Governing Law</u>.  This Agreement and the rights and obligations hereunder shall be governed by, and construed and interpreted in all respects, in accordance with the laws of the State of New York without regard to conflicts of law principles. The parties agree to binding arbitration for any dispute arising out of this Agreement (including dispute on the enforceability hereof) or any claim arising under any federal, state or local statutes, laws, or regulations.  The arbitration will be conducted in New York, NY by a single arbitrator selected by the parties.  If the parties are unable to agree upon a single arbitrator, the New York, NY office of the AAA shall appoint an arbitrator with experience in contract disputes.  The arbitration will be (i) conducted according to the commercial arbitration rules of the AAA in effect at the time of the arbitration hearing and (ii) governed by the Federal Arbitration Act.  The arbitrator's decision will be final and binding on the parties, and the decision may be enforced by either party in any court of competent jurisdiction.  Each party will bear its own expenses and an equal share of the expenses of the arbitrator.  Notice to BOWLMOR AMF for purposes of this Agreement shall be effective if and only if it is delivered by one or more of the following means:  (a) personally; (b) by overnight courier; or (c) by registered United States mail.

  15. <u>Waiver</u>.  The waiver by any party of any breach of any of the provisions of this Agreement shall not constitute waiver of any subsequent breach of the same, or of any other provision of this Agreement.

  16. <u>Modification</u>.  This Agreement may be supplemented, amended, or modified only by the mutual agreement of the parties.  No supplement, amendment, or modification of this Agreement shall be binding unless it is in writing and signed by both parties.

      17. <u>Miscellaneous</u>.  Neither party may assign this Agreement.  If any provision of this Agreement is determined to be in violation of any law, rule, or regulation or otherwise unenforceable, such determination will not affect the validity of any other provision of this Agreement, which will remain in full force and effect.  Each section, provision, paragraph and subparagraph of this Agreement is severable from every other section, provision, paragraph and subparagraph.  This Agreement and payment of the Separation Payment is not an admission of liability by BOWLMOR AMF.  Employee will be responsible for BOWLMOR AMF's reasonable attorney's fees in enforcing Employee's promises herein.  All gender terms shall include masculine and feminine, as appropriate.

      18. <u>Understanding</u>.  This Agreement is a contract.  Employee represents that she is competent, that her promises and release are in her best interest and that (A) in negotiating and executing this Agreement, she has had adequate opportunity to consult an attorney of her choosing concerning the meaning and effect of each term hereof, (B) there are no representations, promises or agreements between the parties other than those set forth herein, and (C) she has carefully read this Agreement, understands its terms and intends to be bound by it.  This agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same instrument.

     IN WITNESS WHEREOF, the parties have executed this Agreement.

| EMPLOYEE: | AMF BOWLING CENTERS, INC. |
|---|---|
| | dba Bowlmor AMF Centers |
| | |
| _____ | By: _____ |
| Name: Thomas Tanase | Name: |
| Date: | Date: |