**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC.; BOWLERO CORP. | § § § | CIVIL ACTION NO. |
| | § | 3:23-cv-00448-HEH |
| *Plaintiffs*, | § § | |
| vs. | § § | |
| THOMAS TANASE, | § § | |
| *Defendant.* | § § | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Plaintiffs AMF Bowling Centers, Inc. ("AMF") and Bowlero Corp. ("Bowlero," and with AMF, "Plaintiffs" or the "Company") respectfully submit this memorandum of law in support of their opposition to Defendant Thomas Tanase's ("Defendant" or "Mr. Tanase") Partial Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

The Company sued Mr. Tanase when it discovered that he was hacking into its computer systems after he resigned from his role as Chief Information Officer.  Since his May 16, 2023 departure from the Company, Mr. Tanase broke into the email account belonging to the Company's Chief Executive Officer, Thomas Shannon, on dozens of occasions, and in the process gained unauthorized access to the Company's most sensitive and privileged documents and information.  Moreover, while improperly retaining his Company-issued electronic devices, Mr. Tanase purged all of the contents of his primary work computer, in contravention of his employment agreement and without any permission to do so.  And, when Mr. Tanase finally returned his devices to the Company, a forensic investigation indicated that he had copied

proprietary documents onto and off of USB storage drives—again without any authorization to do so.

Through his unauthorized surveillance, destruction, and theft of the Company's proprietary documents and information on Mr. Shannon's email account and on the Company's computer servers, Mr. Tanase breached his employment agreement, committed a trespass to chattels, and violated both the Computer Fraud and Abuse Act (the "CFAA") and the Virginia Computer Crimes Act (the "VCCA").

On his partial motion to dismiss, Mr. Tanase accepts as well-pled the breach of contract, CFAA, and VCCA claims. However, he raises two unrelated issues. First, he argues that one of the two Plaintiffs, AMF, should be dismissed because the Complaint does not allege sufficient facts to support Mr. Tanase's liability to AMF. Second, he argues that the trespass to chattels claim is improperly pled because the Complaint alleges no damage to the digital chattels Mr. Tanase accessed without authorization, as he contends is required under Virginia law.

Mr. Tanase's arguments are incorrect in both law and fact. On the issue of AMF's standing to sue, settled Supreme Court jurisprudence makes clear that so long as a single plaintiff has standing to assert the claims alleged in a complaint, the complaint need not plead standing as to other co-plaintiffs. This jurisprudence is dispositive here, where Mr. Tanase does not challenge Bowlero's standing to sue, focusing his motion only on AMF. In any event, Mr. Tanase is simply wrong that the Complaint contains no allegations concerning his liability to AMF. As a factual matter, "Bowlero" is a defined term in the Complaint that captures both Plaintiffs and does not apply only to Bowlero, as Mr. Tanase mistakenly assumes. In fact, various key allegations specifically implicate AMF—most notably, AMF is the counter-party to Mr. Tanase's employment

agreement, which is attached as an exhibit to the Complaint and which forms the basis of the breach of contract claim that Mr. Tanase does not challenge.

Mr. Tanase is equally wrong in his challenges to Plaintiffs' trespass to chattels claim. Even if Mr. Tanase were correct that Virginia law requires damage to the digital chattel to make out a trespass to chattels claim, the Complaint alleges precisely that: Mr. Tanase is alleged to have destroyed the contents of his primary work laptop without authorization. More fundamentally, however, Mr. Tanase misstates the requirements of the tort of trespass to chattels. This Court's own precedents have recognized, in digital trespass to chattels cases, that the plaintiff's "possessory interest" in the digital chattel is impaired through unauthorized access to the chattel— even in the absence of damage to the chattel itself. Mr. Tanase engaged in such unauthorized access of both the Company's computer systems and Mr. Shannon's email address.

Mr. Tanase's partial motion to dismiss should be denied in its entirety with prejudice.

## STATEMENT OF FACTS

Mr. Tanase joined Strike Holdings, LLC, a predecessor of the Company, in June 2002. Complaint, ECF No. 1 ("Compl.") ¶ 15. He rose through the ranks and eventually became the Company's Chief Information Officer. *Id.* As part of Mr. Tanase's employment, he and AMF[1] executed a Confidential Information and Work Product Assignment Agreement (the "Employment Agreement") in 2015, governing Mr. Tanase's access, use, and retention of the Company's Confidential Information before and after his employment with the Company. *Id.* at ¶¶ 8, 16–18; *see also id.*, Ex. A.

---

[1] AMF is a wholly owned subsidiary of Bowlero, which is a publicly traded company and the largest owner and operator of bowling centers in the world. Compl. ¶¶ 8–9.

Mr. Tanase's employment with the Company ended abruptly when he resigned after a verbal altercation with his supervisor on May 15, 2023. Compl. ¶¶ 2–3. Two weeks later, on May 31, 2023, Mr. Tanase spoke with the Company's Vice President of Human Resources. *Id.* at ¶¶ 25–26. During this conversation, he threatened to "bury Tom," referring to the Company's Chief Executive Officer Thomas Shannon, and declared that he wanted to get "revenge" or "retribution" against both the Company and Mr. Shannon. *Id.* Mr. Tanase indicated that he had already spoken to reporters at CNBC and several lawyers, including attorney Daniel Dowe, who is currently representing parties adverse to the Company in various ongoing matters. *Id.* at ¶ 26.

In response to these threats, the Company launched an investigation to determine whether Mr. Tanase had improperly accessed its computer servers since his resignation, given that Mr. Tanase had failed to return his Company-issued computer devices. Compl. ¶¶ 24–28. The Company's investigation uncovered that:

- An IP address associated with Mr. Tanase had begun logging in to Mr. Shannon's Company email account on a regular basis after May 16, 2023, the effective date of Mr. Tanase's resignation. *Id.* at ¶ 29. Prior to Mr. Tanase's resignation, this same IP address had frequently accessed Mr. Tanase's own email account, suggesting that the IP address belongs to him. *Id.* at ¶ 31.

- When Mr. Tanase finally returned his primary work laptop, a Dell XPS computer, on June 20, 2023, a forensic analysis of that laptop could not identify any documents predating June 6, 2023, revealing that Mr. Tanase had destroyed the contents of his laptop on or before that date. *Id.* at ¶¶ 41, 47.

- File directories on the Dell XPS indicate that over 2,100 documents containing the Company's confidential and proprietary information were created on that computer

on June 6, 2023, in the same period during which a USB device was connected to the Dell XPS. *Id*. at ¶¶ 48, 52. The metadata on each of these documents predates June 6, 2023, suggesting that they were put onto the USB device from some other source before being transferred to the Dell XPS. *Id*. at ¶ 48.

Each of these findings represents a serious, unauthorized breach of the Company's computer systems. As to Mr. Shannon's email account, Mr. Tanase had Mr. Shannon's password *only* to perform certain administrative functions, but any limited authorization to use that password ended with Mr. Tanase's resignation and, in any event, Mr. Tanase was never permitted to read Mr. Shannon's emails. Compl. ¶ 33. As to the contents of Mr. Tanase's devices, he had no authorization to wipe or copy any of their contents—in fact, he was obligated to return all such devices, *intact*, immediately upon his resignation, as agreed in the Employment Agreement. *Id.* at ¶¶ 22, 52, 60. This obligation was further codified in Company policies that Mr. Tanase oversaw in his capacity as CIO of the Company. *Id.* at ¶ 22.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged." *Standard Fire Ins. Co. v. Proctor*, C.A. No. 3:10CV655-HEH, 2011 WL 3269633, at *2 (E.D. Va. July 29, 2011) (Hudson, J.) (citing *Twombly*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A district court considering a Rule 12(b)(6) motion must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Dismissal is inappropriate even if "it strikes a savvy

judge that actual proof of those facts is improbable and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

## ARGUMENT

Mr. Tanase's arguments for dismissal rest on mischaracterizations of the facts alleged in the Complaint and misstatements of the applicable law.

### A. Mr. Tanase's Argument as to AMF's Standing to Sue Is Legally and Factually Wrong

Dismissal of claims by AMF is inappropriate because Mr. Tanase does not (and cannot) challenge Bowlero's standing to sue on its own behalf. In cases with multiple plaintiffs, "[a]t least one plaintiff must demonstrate standing for each claim and form of requested relief." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). Where "at least one individual plaintiff . . . has demonstrated standing to assert" certain claims, the Court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264, 264 n. 9 (1977); *Horne v. Flores*, 557 U.S. 433, 446 (2009) ("Because the superintendent clearly has standing . . . , we need not consider whether the Legislators also have standing[.]"); *see also Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("A case is justiciable if some, but not necessarily all, of the plaintiffs have standing as to a particular defendant."). Accordingly, because Mr. Tanase makes no challenge to Bowlero's standing to sue, dismissal of AMF's claims is inappropriate.

The sole case Mr. Tanase cites to the contrary is inapposite. That case, *Check 'n Go of Va., Inc. v. Laserre*, involved post-trial briefing (not a motion to dismiss) of a *single plaintiff's* standing to recover damages suffered by its non-party corporate parent. C.A. No. 6:04-CV-00050, 2005 WL 1926609 (W.D. Va. Aug. 9, 2005) (denying standing). Here, conversely, Mr. Tanase's implicit concession that Bowlero has properly pled standing to sue is fatal to his motion. *See, e.g.,*

-6-

*Falls Church Med. Ctr., LLC v. Oliver*, 346 F. Supp. 3d 816, 824 (E.D. Va. 2018) (Hudson, J.) (denying motion to dismiss for lack of standing where one plaintiff was subject to criminal prosecution, even though "Defendants may well be correct that the original Plaintiffs are not subject to criminal prosecution.").

Even if this Court had any basis to consider whether the Complaint pleads claims on behalf of AMF, Mr. Tanase is wrong to maintain that "[t]here is not a single factual allegation in the Complaint that give [*sic*] rise to any claim against Tanase by AMF." Memorandum in Support of Motion to Dismiss, ECF No. 34 ("Mot."), 2. To begin, "Bowlero" is a defined term that includes both Plaintiff AMF and Plaintiff Bowlero. *See* Compl. at 1. Accordingly, all allegations that refer to Bowlero encapsulate both Plaintiffs. Moreover, the Employment Agreement forming the basis of Plaintiffs' breach of contract claim, which is attached as Exhibit A to the Complaint and therefore forms part of the record on a motion to dismiss,[2] is an agreement between Mr. Tanase and AMF. *See* Compl. Ex. A at 1. Accordingly, at least as to the breach of contract claim, AMF has standing to sue. *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2020 WL 5751195, at *14 (S.D.N.Y. Sept. 25, 2020) ("It is axiomatic that parties to a contract have standing to enforce its terms and, specifically, 'to sue for breach of contract.'").

## B.   The Trespass to Chattels Claim Is Properly Pled

Mr. Tanase mischaracterizes the factual record and misstates the applicable legal principles when he argues that Plaintiffs' trespass to chattels claim must be dismissed because the Complaint

---

[2] A district court considering a motion to dismiss for failure to state a claim is entitled to consider "documents . . . explicitly incorporated into the complaint by reference" and "those attached to the complaint as exhibits." *Glenn v. Wells Fargo Bank, N.A.*, 710 Fed. App'x 574, 576 (4th Cir. 2017).

fails to plead that the chattel was damaged over the course of the trespass. Mot. at 3. Once again, Mr. Tanase's argument fails.

Under Virginia common law,[3] a trespass to chattels occurs "when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization[,]" and "the chattel is impaired as to its condition, quality, or value." *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451–52 (E.D. Va. 1998) (internal quotations omitted); *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing *Vines v. Branch*, 418 S.E.2d 890, 893–94 (Va. 1992)). "The unauthorized intrusion into an individual's computer system through hacking, malware, or even unwanted communications supports actions under" a trespass to chattels claim. *Microsoft Corp. v. Does 1-18*, C.A. No. 1:13cv139, 2014 WL 1338677, at *9 (E.D. Va. Apr. 2, 2014).

Mr. Tanase's breaches of the Company's computer systems satisfy each element of the tort of trespass to chattels, including the damage requirement that Mr. Tanase challenges on his motion. First, the Complaint alleges that Mr. Tanase's conduct "caused injury and damage to Bowlero and Bowlero's goodwill and reputation and Bowlero seeks damages in an amount to be proven at trial." Compl. at ¶ 78. Such an allegation is sufficient in a pleading. *F.A.A. v. Cooper*, 566 U.S. 284, 295–96 (2012) ("General damages . . . need not be alleged in detail."). Second, on or before June 6, 2023, Mr. Tanase destroyed all of the documents and data that were on his Dell XPS, without

---

[3] Federal courts exercising supplemental jurisdiction over state law claims apply "the choice of law rules of the forum state." *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012). "In tort actions, it is well-settled that Virginia applies the rule of *lex loci delicti*, or the law of the place of the wrong." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 914 n.4 (E.D. Va. 2004). Virginia state law applies to the trespass to chattels claim because all conduct giving rise to the tort occurred in the state of Virginia: Plaintiffs are Virginia corporations headquartered in Mechanicsville, Virginia (Compl. ¶¶ 8–9); Plaintiffs' email servers are in Virginia (Compl. ¶ 14); and Mr. Tanase is a resident of Virginia (Compl. ¶ 10).

any authorization to do so. Compl. ¶¶ 4, 47, 51. All such documents and data are no longer available to the Company, despite belonging to the Company. *Id.* Third, Mr. Tanase's unauthorized surveillance of Mr. Shannon's emails and his copying of over 2,100 documents onto and off of a USB device diminished the value of the documents he surveilled and copied. These documents represent highly sensitive and proprietary documents, and their value as confidential documents is impaired by Mr. Tanase's surveillance and copying. *Id.* at ¶¶ 3, 34, 52–54. This is particularly so where, as here, Mr. Tanase has threatened retaliation against the Company, including potentially by disclosing the sensitive information he surveilled to third parties. *Id.* at ¶ 55.

These facts, as alleged in the Complaint, are sufficient to state a claim for trespass to chattels in particular because courts applying Virginia law accept that mere harm to a plaintiff's "possessory interest" in digital chattels can satisfy the requirement that the chattels be impaired as to their condition, quality, or value. *LCGM,* 46 F. Supp. 2d at 451-52. For example, in a pair of cases, this Court has recognized that the unauthorized transmission of email spam over an internet provider's email platform injures the provider's possessory interest in that platform, even in the absence of an allegation that the platform was damaged in some way. *Id.* at 452 (denying motion to dismiss where "[p]laintiff asserts that its possessory interest in its computer equipment and business goodwill has been injured by defendants' unauthorized use of AOL's computers."); *IMS*, 24 F. Supp. 2d at 550 (denying motion to dismiss where "Melle's contact with AOL's computer network injured AOL's business goodwill and diminished the value of its possessory interest in its computer network."). These cases, and those that follow it, squarely undermine Mr. Tanase's contentions that damage to the chattels is necessary to make out a claim for trespass to chattels. *Microsoft*, 2014 WL 1338677, at *10 (denying dismissal where defendant hacked search engine

to direct users to websites of its choosing and thereby "caused injury to Microsoft and its customers by lost time and money, and tarnished Microsoft's goodwill."). In fact, this Court has preferred these precedents over those cited by Mr. Tanase. *See State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 320 (E.D. Va. 2009) ("Although KSE's use of StateScape's resources is not alleged to have affected StateScape's network capacity and performance, given that StateScape charges fees for its passwords, the 'value of [StateScape's] possessory interest in its computer network' is diminished if unauthorized users access its password-protected areas.") (declining to follow *SecureInfo Corp. v. Telos Corp.,* 387 F. Supp. 2d 593 (E.D. Va. 2005)).

## **CONCLUSION**

For all of these reasons, the Company respectfully requests that Mr. Tanase's partial motion to dismiss be denied with prejudice.

**Dated**:  August 17, 2023                         Respectfully submitted,

**AMF BOWLING CENTERS, INC.**
**and**
**BOWLERO CORP.**

/s/ Neil S. Talegaonkar
Randy C. Sparks, Jr. (VSB No. 40723)
Neil S. Talegaonkar (VSB No. 44589)
Catrina C. Waltz (VSB No. 98446)
KAUFMAN & CANOLES, P.C.
1021 East Cary Street, Suite 1400
Richmond, VA 23219
Phone: (804) 771-5700
Fax: (888) 360-9092
rcsparks@kaufcan.com
nstalegaonkar@kaufcan.com
ccwaltz@kaufcan.com

Alex Spiro (NY Bar No. 4656542)
(Admitted *Pro Hac Vice*)
Hope D. Skibitsky (NY Bar No. 5362124)
(Admitted *Pro Hac Vice*)
Daniel Sisgoreo (NY Bar No. 5812417)
(Admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, Floor 22 New
York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
danielsisgoreo@quinnemanuel.com


Asher B. Griffin (TX Bar No. 24036684)
(Admitted *Pro Hac Vice*)
300 West 6th St., Suite 2010
Austin, TX 78701
Phone: (737) 667-6100
Fax: (737) 667-6110
ashergriffin@quinnemanuel.com


Michael Shaheen (DC Bar No. 997266)
(Admitted *Pro Hac Vice*)
1300 I Street NW
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
michaelshaheen@quinnemanuel.com

*Counsel for Plaintiffs AMF Bowling Centers, Inc. and Bowlero Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jay I. Igiel, Esq.
Nealon & Associates, P.C.
119 North Henry Street
Alexandria, Virginia 22314
jigiel@nealon.com
*Counsel for Defendant Thomas Tanase*

/s/ Neil S. Talegaonkar
Randy C. Sparks, Jr. (VSB No. 40723)
Neil S. Talegaonkar (VSB No. 44589)
Catrina C. Waltz (VSB No. 98446)
KAUFMAN & CANOLES, P.C.
1021 East Cary Street, Suite 1400
Richmond, VA 23219
Phone: (804) 771-5700
Fax: (888) 360-9092
rcsparks@kaufcan.com
nstalegaonkar@kaufcan.com
ccwaltz@kaufcan.com