# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA RICHMOND DIVISION

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC.; | § | |
| BOWLERO CORP., | § | |
| | § | Civil Action No. |
| *Plaintiffs*, | § | |
| | § | 3:23-cv-00448-HEH |
| vs. | § | |
| | § | |
| THOMAS TANASE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS

After Defendant Thomas Tanase ("Tanase") resigned from his employment with Plaintiffs AMF Bowling Centers, Inc. and Bowlero Corp. (collectively, "Bowlero" or the "Company"), he used the knowledge he acquired as Bowlero's Chief Information Officer to illegally surveil the email account of Bowlero's highest-ranking executive, and he improperly retained documents and devices belonging to the Company, in breach of his employment agreement. As Bowlero will show in its forthcoming motion for summary judgment, Tanase has offered no defense to any of the claims against him. To the contrary, Tanase has exploited the judicial process to advance a campaign of lies. His discovery responses and court filings were riddled with intentional falsehoods that Tanase corrected only when ordered to do so by this Court after his lawyer withdrew for ethical reasons. And in his deposition last month, Tanase baldly admitted to perjury, displaying a cavalier attitude to deception and an open contempt of this Court and the judicial process it oversees.

Faced with Tanase's bald admissions of perjury on critical aspects of this case, Bowlero brings this motion for sanctions to put an end to Tanase's abuse of the judicial process. Tanase's course of conduct justifies the highest possible penalty available to this Court: the entry of a default judgment finding Tanase liable for all claims brought by Bowlero or, at a minimum, the

exclusion of Tanase's affirmative testimony in future phases of the case. Tanase has so seriously impeached his own credibility that no testimony he can offer in his defense will rehabilitate him, and, in these circumstances, default judgment is appropriate in order to protect the integrity of the judicial process.

## FACTUAL BACKGROUND

### A. Tanase Resigns And Threatens Bowlero

Tanase worked for Bowlero, a publicly-traded company and the largest owner and operator of bowling centers in the world, in various capacities beginning in 2002. Tanase eventually reached the role of Chief Information Officer. On May 15, 2023, Tanase lost his temper, culminating in him yelling at his supervisor and resigning.[1] ECF No. 8-1 ("Webb Decl.") ¶¶ 6-7. Although Tanase attempted to revoke his resignation, Bowlero rejected that attempt and advised Tanase that his resignation took effect on May 16, 2023. *Id.* ¶ 8.

On May 31, 2023, Bowlero's Director of Human Resources, Heather Webb ("Webb"), called Tanase to check in. Webb Decl. ¶ 9. During that call, Tanase told Webb that he was upset with the Company and Thomas Shannon ("Shannon"), Bowlero's CEO. *Id.* Tanase stated: "I am going to bury Tom," referring to Shannon, and claimed he would get "revenge" or "retribution" against the Company and Shannon. *Id.*

---

[1] Although Tanase has "declare[d] under penalty of perjury" that he "never resigned," ECF No. 29-1, ¶ 4, he has made numerous contemporaneous admissions that he did in fact resign. Webb. Decl. ¶¶ 7-8; Tanase Deposition Transcript ("Tanase Dep"), 26:11-23, ECF No. 97-1 (May 16, 2023 Text from Tanase to Shannon) ("Tom, I was a bit upset. **I did not mean to resign**. I was at work at 9am this morning. Please help. I am part of this company and want to be until inretire [sic]."); *Id*. 30:19–31:1 (May 16, 2023 Text from Tanase to Bowlero executive, Brett Parker) ("Please help. **I was upset. I did not really reaign** [sic].").

2

### B. Tanase Repeatedly Hacks The Email Account Of Bowlero's CEO

Immediately after Tanase's resignation, Bowlero took measures to ensure that he could no longer access its computer systems or servers, including by disabling Tanase's user ID and login credentials to Bowlero's IT systems and servers. ECF No. 8-2 ("Crossman Decl.") ¶ 10. Any prior access Tanase had to Bowlero's IT systems (including its CEO's email account) was permanently and automatically revoked as a matter of practice, policy, and contract. Crossman Decl. ¶¶ 7-10. Having served as Bowlero's CIO, Tanase knew that he lacked any authorization to access Bowlero's IT systems following his resignation; for example, Tanase has since admitted that his authority to access Mr. Shannon's Email Account was revoked upon the cessation of his employment with Bowlero. Tanase Deposition Transcript ("Tanase Dep"), 104:14-16, ECF No. 97-1. Yet, Bowlero's investigation revealed (and discovery has confirmed) that, for nearly a month following his resignation, Tanase (1) hacked into Shannon's email account, and (2) improperly accessed and manipulated his Bowlero-issued laptop in violation of the Computer Fraud and Abuse Act (CFAA), the Virginia Computer Crimes Act (VCCA), Virginia common law, and in contravention of his Employment Agreement.[2] ECF No. 1-2 ("Employment Agreement").

Following Tanase's resignation, Bowlero conducted an investigation to ensure that he was no longer accessing Bowlero's IT infrastructure. In particular, Bowlero's Vice President of

---

[2] In 2015, Tanase executed a "Confidential Information and Work Product Assignment Agreement" that set forth the terms and conditions of his continued employment with Bowlero. Employment Agreement § 2. Therein, Tanase acknowledged exposure and access to trade secrets and confidential information and agreed "at all times during the term of [his] employment and at all times thereafter, to hold in strictest confidence, and not to use or disclose to any person, firm or corporation, except for the direct benefit of the Company related to [his] work, any Confidential Information." *Id.* Tanase further committed to "return all documents and other tangible materials . . . furnished to or accessed by [him] or produced or obtained by [him] in connection with [his employment] . . . ." upon his departure from the Company. *Id.* § 10.

Information Technology, Kevin Crossman, reviewed Bowlero's electronic "Duo logs" which record the IP addresses remotely accessing any given Bowlero email account reveal Tanase-associated IP addresses—both from before and after his termination—repeatedly accessed Shannon's email account from May 16 to June 13, 2023 (when this access was discovered and disabled). Crossman Decl. ¶¶ 11-17, Exs. C, D.

The Duo logs for Shannon's email account show that Tanase accessed Shannon's email account from Virginia on or after his resignation using IP address ending in 176 (the ".176 IP Address"). *Id.* Internet service records subpoenaed from Comcast confirm that Tanase was registered as the owner of the .176 IP Address during the relevant period.[3] Tanase Dep. 156:6–13. This access from the .176 IP Address occurred on May 16, May 17, May 18, June 6, June 7, June 8, June 9, June 12, and June 13. Crossman Decl. ¶¶ 13-17. On May 17, the .176 IP Address accessed Shannon's email account *five times*. *Id.* And, on June 8, this same IP address accessed Shannon's email account *four times*. *Id.*

The Duo logs also reveal that Tanase accessed Shannon's email account from Connecticut through a different IP address ending in .10 (the ".10 IP Address"). *Id.* The .10 IP Address also lists Tanase as the subscriber to the relevant Internet Service Provider for the associated Connecticut address, the residence of his ex-wife and children at the time. Tanase Dep. 150:4–13. Tanase's access of Shannon's email from the .10 IP Address occurred on June 2, June 3, June 4, and June 5. Crossman Decl. ¶¶ 13-17; Ex. C, D. On June 2, Tanase accessed Shannon's email

---

[3] As further evidence that the .176 IP Address belonged to Tanase, Bowlero has identified three documents in the discovery record in which e-signatures bearing Tanase's name were imprinted with the .176 IP Address, indicating that he used that IP address when electronically signing the relevant documents.

account using the .10 IP address *four times*. *Id.* And, on June 5, Tanase accessed Shannon's email account *three times* using the 10 IP address. *Id.*

Immediately after discovering Tanase's improper access of its CEO's email account, Bowlero changed Shannon's login credentials and took additional measures to ensure Tanase could no longer access any Bowlero systems, including instituting a firewall block against the Tanase-associated .176 IP Address. Crossman Decl. ¶¶ 18-19. After imposing the block, Bowlero's firewall logs show that Tanase continued to attempt to access Bowlero's servers but was unable to do so. *Id.* ¶ 20.

### C. Tanase Accesses And Wipes Clean His Bowlero-Issued Laptop

In addition to his illegal surveillance of Shannon's email account, Tanase did not immediately return his Bowlero-issued IT devices in contravention of his Employment Agreement and Bowlero's "Corporate-Owned Data Devices" policy. *See* Employment Agreement §§ 2, 10; Crossman Decl. ¶¶ 8, 21; Webb Decl. ¶¶ 10-11. Webb contacted Tanase on May 31, 2023 through his personal email to request that he return outstanding Bowlero-issued devices. Webb Decl. ¶¶ 10-11. But Tanase did not return these devices—a Dell XPS laptop, an iPad Pro, a reMarkable 2 tablet, and a HP windows tablet (together, the "Bowlero Devices")—until June 20, 2023 and only then after receiving a June 17, 2023 cease-and-desist letter from Bowlero's counsel regarding his post-resignation conduct. Webb Decl. ¶¶ 10-11; Shannon Decl. ¶ 7.

Upon receipt of the Bowlero Devices, Bowlero engaged third-party Sage Intelligence Group, LLC ("Sage") to conduct a forensic examination, which concluded the following: *See* ECF No. 8-4 ("Santilli Decl.") ¶¶ 1, 3. First, Tanase copied roughly 2,100 documents from his Bowlero-issued laptop onto a remote storage device prior to returning the Bowlero Devices. Santilli Expert Report, ¶¶ 16-18. Second, Tanase wiped and reformatted that laptop on June 6, 2023, then re-installed the operating system, and finally copied back these documents onto his laptop. *Id.* Third,

Tanase continued to possess the same documents on his remote storage device even after handing over the Bowlero devices. *Id.* Bowlero's review of this remote storage device has revealed Tanase retained many a large volume of Bowlero confidential files not found on the Dell XPS.

### D. Bowlero Initiates Suit

On July 12, 2023, Bowlero initiated this suit and asserted claims for (1) violation of the CFAA, 18 U.S.C. § 1030(g); (2) the VCCA, Va. Code § 18.2-152.1, *et. seq.*; (3) Trespass to Chattels; and (4) Breach of Tanase's Employment Agreement. ECF No. 51. In addition, Bowlero contemporaneously sought a temporary restraining order and preliminary injunction. ECF Nos. 7, 8. Tanase opposed that motion, ECF No. 29, and filed an affidavit in support on the docket, ECF No. 29-1.[4] The parties ultimately stipulated to an injunctive order that provided the relief Bowlero sought and thus mooted the need for the hearing. *Compare* ECF No. 7-1, *with* ECF No. 30, *and* ECF No. 31. The Court thereafter denied Tanase's motion to dismiss and granted Bowlero leave to amend. ECF Nos. 33, 44, 47. Bowlero filed an Amended Complaint to clarify the relationship between AMF Bowling Centers, Inc. and Bowlero Corp. ECF No. 51.

### E. Tanase's Original Counsel Noisily Withdraws

On February 23, 2024, the Friday prior to Tanase's February 27 scheduled deposition, Tanase's then-counsel, Jay Igiel ("Igiel"), notified Bowlero's counsel of his intent to withdraw from representing Tanase in this litigation and requested a continuance of the February 27 deposition. Igiel informed the Court that he needed to withdraw prior to the deposition for ethical reasons. ECF Nos. 76, 79. Following certain *ex parte* communications between Igiel and the Court, the Court, noting "new evidence regarding prior misrepresentations" by Tanase in

---

[4] After this Court ordered Tanase to correct misstatements on the record, Tanase has since offered amendments to both of these filings. ECF No. 83, 84.

6

documents filed on the public docket and/or served on Bowlero in discovery, ECF No. 81, ordered Tanase to correct all misrepresentations by 5 p.m. on March 4, 2024.

## II. ARGUMENT

Tanase has engaged in bad faith conduct offensive to the judicial process. During his March 11 deposition, Tanase admitted to intentionally lying in a July 24, 2023 declaration, which he submitted to the Court under penalty of perjury in opposition to Bowlero's Motion for a Temporary Restraining Order. ECF. No. 29-1. This admission of perjury on a material issue in this case is part of a pattern of vexatious and deceptive conduct before this Court and would never have come to light had Tanase's prior attorney not withdrawn for ethical reasons. Accordingly, the Court should exercise its inherent authority to enter default judgement against Tanase or, alternatively, bar him from offering any further affirmative testimony as evidence in this case. At the very least, the Court should award Bowlero its related attorney's fees and costs.

### A. This Court Has The Inherent Authority To Sanction Tanase

Federal courts possess the inherent power to fashion appropriate sanctions for parties who act in "bad faith, vexatiously, wantonly, and for oppressive reasons, as when a party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991) (citations and quotations omitted). Functioning as gap fillers, these inherent powers ensure federal courts can "manage their own affairs so as to achieve the orderly and expeditious disposition of cases" even in the absence of specific authority conferred by statute or the Federal Rules. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)); *Chambers*, 501 U.S. at 46 ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the

inherent power, for that power is both broader and narrower than other means of imposing sanctions."); *see also White v. Raymark Indus., Inc.*, 783 F.2d 1175, 1177 (4th Cir. 1986) ("Federal courts have long recognized their inherent power to sanction litigants for misbehavior in the judicial process.")

Unlocking these inherent powers requires a finding of bad faith conduct in the litigation. *Chambers*, 501 U.S. at 50-53. To determine whether a party has engaged in bad faith conduct, courts may consider "the actions that led to the lawsuit" as well as the conduct in the litigation. *Stradtman v. Republic Services, Inc.*, 121 F. Supp. 3d 578, 581 (E.D. Va. 2015) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). That said, "[a] court must . . . comply with the mandates of due process" when "determining that the requisite bad faith exists." *Chambers*, 501 U.S. at 50; *Kilborn v. Bakhir*, 70 F. App'x 692, 693–94 (4th Cir. 2003) (requiring "specific findings that [a party] . . . proceeded with the litigation in bad faith, vexatiously, wantonly, or for oppressive reasons" before imposing sanctions under the court's inherent powers).

When a court acts under its inherent powers in the Fourth Circuit, "it is unclear whether a subjective or objective bad faith standard applies." *Stradtman*, 121 F. Supp. 3d at 582, 587-88 ("Objective bad faith does not require malice or ill will; reckless indifference to the law will qualify.") (quotations and citations omitted). Regardless, the facts here show Tanase acted in bad faith under the more stringent subjective bad faith standard. *See Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x. 222, 225 (4th Cir. 2008) (declining to decide whether subjective or objective bad faith standard applied under 28 U.S.C. § 1927 because the facts supported a finding of bad faith under either).

### 1. Tanase Admits To Perjury Before This Court

Tanase's deposition testimony speaks for itself:

8

>     Q.  Okay.  So you understood when you lied to the court in this affidavit that your statements were under penalty of perjury of the laws of the United States; is that correct?
>     A.  Yes.  I thought it was more important to save my friends and their jobs and I openly admit it.
>     . . .
>     A. I accept any punishment for doing that.
>     . . .
>     Q.  You submitted an affidavit to the court on July 24th that we've established had multiple lies in it, correct?
>     A. Yes.
>     Q.  And your rationale was you were doing that to protect your friends, correct?
>     A.  I take full responsibility for it too.

Tanase Dep. 49:19–50:1, 102:17–23.

Tanase's admission of intentional lies offered to the Court under knowing penalty of perjury[5] qualifies as subjective bad faith conduct such that "the very temple of justice has been defiled," *Chambers*, 501 U.S. at 46, because "blatant deception amounts to bad faith." *Brooks Sports, Inc. v. Anta (China) Co.*, 2018 WL 7488924, at *16 (E.D. Va. Nov. 30, 2018) (recommending sanction of default judgment after finding of bad faith conduct"), report and recommendation adopted, 2019 WL 969572 (E.D. Va. Jan. 11, 2019).  Even if it were relevant to the sanctions analysis, which it is not, Tanase's purported reason for intentionally offering false testimony to the Court is not credible given that his new version of events appears to be an attempt to make up lost ground on the critical issue of whether his access of Bowlero's computers and

---

[5] "Whoever . . . in any declaration . . . permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true . . . is guilty of perjury." 18 U.S.C. § 1621(2).  Despite Tanase's purported intentions, his declaration submissions, which he knew to be lies yet submitted anyway, are material to Bowlero's CFAA, VCCA, breach of contract, and trespass to chattels claims because they have "a natural tendency to influence, or [were] capable of influencing, the decision-making body to which [they were] addressed" on the issue of Tanase's authorized access of the confidential files on his Dell XPS after his employment ended. *United States v. Savoy*, 38 F. Supp. 2d 406, 413-14 (D. Md. 1998) (quoting *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998)).

9

confidential information was authorized. In other words, Tanase appears to now be changing his story, not because he suddenly has a new found appreciation for truthful testimony, but instead to place an imprimatur of authorization on his post-employment access of Bowlero's computer and the confidential files thereon.

### 2. Tanase Repeatedly Undercuts His Credibility With Contradictory Or Implausible Testimony

Beyond admitting to perjury in his prior written submissions, Tanase showed throughout the deposition that his word cannot be trusted. For example, when asked early on in the deposition why he thought in June 2023 (before receiving Bowlero's cease-and-desist letter) that Bowlero was investigating him, Tanase testified: "I had a suspicion that just came about when people started going silent on me. But that's all it was, it was a suspicion." When asked whether "anyone t[old] [him] that Bowlero was investigating [him]," Tanase testified: "Not that I could recall." *Id.* 112:21–23. A few hours later, when asked the *same* question[6], Tanase testified that he received "[a]n anonymous tip." *Id.* 212:7–10.

Tanase also changed tack during his deposition with regard to asserting the Fifth Amendment in response to questions about his computer hacking. When asked why he answered the same questions in discovery responses with an invocation of the Fifth Amendment but was now offering denials, Tanase testified:

```
Q.  My question is your testimony is that you plead the
Fifth to request for admission 141 because you construed
the word 'you' to mean possibly a Bowlero-issued laptop
that was not even yours, correct?
A.  That's correct.
```

---

[6] "Q. How did you understand that Bowlero was investigating you if not for trying to hack into Tom Shannon's emails?" *Id.*

10

Tanase Dep. 101:15-19.[7] Tanase further nonsensically explained that a denial of his hacking Bowlero's emails should subject him to criminal liability because "a link may have gotten clicked; I didn't. It could have come up automatically. I didn't see it." *Id.* 101:20–102:4.

### B. The Court In Its Discretion May Fashion An Appropriate Sanction For Tanase's Bad Faith Conduct

The imposition of sanctions under a court's inherent powers serves the dual role of "vindicating judicial authority" and providing redress for litigants who bear the brunt of a party's bad faith acts. *See Chambers*, 501 U.S. at 46. "Such sanctions may include assessing fees and costs, excluding evidence or defenses, or even the dismissal of a party's claims," *White*, 2014 WL 12591153, at *1 (citations omitted), as well as the entry of default judgment as to liability. *See Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, 2019 WL 6696694 (D. Md. Dec. 6, 2019) ("This Court also concludes that, as an alternative holding, default judgment against Defendants as to the issue of liability is an appropriate court sanction."); *see also Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007) (exercising inherent authority to find "that no sanction less than default judgment as to liability for all counts of the Amended Complaint and an award of reasonable attorney's fees" would suffice under the circumstances), *affirmed*, 290 F. App'x 324 (11th Cir. 2008) ("the district court did not abuse its discretion by granting default judgment against [defendant] as a sanction for misconduct").

---

[7] Tanase was deposed on March 11. Following his deposition, Tanase once again obtained new counsel. On March 19 and March 21, Tanase served amended responses to Bowlero's Requests for Admission that now state, "Denied. The Request is factually untrue" where Tanase previously invoked his Fifth Amendment rights, including on the crucial issue of whether Tanase accessed Bowlero's CEO, Thomas Shannon's, email on at least one date after May 17, 2023, a "correction" which Tanase also testified to in his deposition. Tanase Dep. 95:4-96:9. On April 1, 2024, Daniel Kim, Tanase's counsel who attended and defended Tanase's deposition, filed a motion to withdraw as counsel. ECF No. 98. The Court grant that motion on April 3, 2024. ECF No. 99.

11

### 1. Default Judgment Is An Appropriate Sanction Under The Circumstances

"Submitting a false discovery document—or fabricating evidence—has been referred to as the most egregious misconduct," and here, Tanase has done so repeatedly. *Salgam v. Advanced Software Sys., Inc.*, 2020 WL 6322857, at *4 (E.D. Va. July 2, 2020) (citations and quotations omitted), aff'd, 2023 WL 5165275 (4th Cir. Aug. 11, 2023). The Fourth Circuit has articulated contextual factors in *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461-63 (4th Cir. 1993) designed to weigh the severity of sanctionable conduct: (a) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney; (b) the degree of the wrongdoer's culpability; (c) the prejudice to the judicial process and the administration of justice; (d) the prejudice to the victim; (e) the availability of other sanctions to rectify the wrong by holding culpable persons accountable, compensating harmed persons, and deterring similar conduct in the future; and (f) the public interest.

In view of Tanase's pattern of bad faith conduct, these factors counsel the entry of default judgment because when, as here, "a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action" or enter default. *Id.*; *see also Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, 2019 WL 6696694, at *8 (D. Md. Dec. 6, 2019) (noting that default judgment is "appropriate against Defendants under this Court's inherent power to sanction" based on the *Shaffer* factors as well as under a similar Rule 37 default judgment standard); *Richardson v. Cabarrus Cnty. Bd. of Educ.*, 151 F.3d 1030 (4th Cir. 1998) (affirming court's summary application of *Shaffer* factors to find that dismissal was proper to "protect the integrity of the court or the public interest").

(a) *Tanase, Not His Lawyers, Is To Blame*

In recognition that courts seldom dismiss claims against blameless clients, courts are instructed to consider whether the bad faith conduct at issue is attributable to their attorney or the client themselves. *Barber v. Coastal Horizons Ctr., Inc.*, 2023 WL 2302003 (E.D.N.C. Mar. 1, 2023) (harshest sanction less warranted when counsel shares in blame). Here, Tanase's prior counsel stated he had an ethical obligation, leading to *ex parte* communications with the Court and an order from the Court directing Tanase to correct his prior misrepresentations. Thus, it is clear that Tanase, not his lawyer, is to blame for his pattern of false and contradictory testimony as well as his dilatory tactics. *Salgam*, 2020 WL 6322857, at *4-5 ("The Court also finds that [the party], and not his counsel, is responsible for the creation and submission of the fabricated emails to his counsel and opposing counsel over the years; that he acted on his own, without knowledge of or condonation by his counsel"); *see also Brooks*, 2018 WL 7488924, at *18 ("the client, not counsel, is completely at fault for the wrongful conduct.").

(b) *Tanase Is Highly Culpable*

Tanase has now admitted he perjured himself, offered contradictory evidence on a growing list of issues, and offered implausible explanations for his need to change his story. *Salgam*, 2020 WL 6322857, at *4-5 (offering of false testimony and evidence as well as "less than credible" explanations evinced a high degree of culpability under *Shaffer* analysis). He moreover now flatly denies he ever accessed Mr. Shannon's email, but his explanation of his previous assertion of the Fifth Amendment on this issue is simply nonsensical. This testimony is all the more unbelievable when paired with the fact that Tanase is yet to even attempt to rebut the considerable digital forensic evidence showing two different Tanase IP addresses repeatedly accessed Shannon's email after Tanase's end of employment and only stopped doing so when Shannon's password changed.

These circumstances in tandem with evidence that Tanase wanted to "bury Tom Shannon" and get "revenge" against Bowlero evince a high degree of culpability.

          (c)     *Tanase's False Testimony Is Prejudicial To The Judicial Process*

Here, the issues on which Tanase has perjured himself or otherwise provided wholly incredible testimony—namely, his unauthorized access to Bowlero's computer and email systems—speak to the very core of Bowlero's four claims. *See United States v. Steele*, 595 F. App'x. 208, 210 (4th Cir. 2014) (analyzing CFAA elements of intentional access without authorization in former employee context); . *TK Elevator Corp. v. Shropshire*, 2022 WL 564648, at *5 (W.D. Va. Feb. 23, 2022) (unauthorized copying of digital files constitutes violation of VCCA); *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (setting forth elements of trespass to chattels claims) (citing *Vines v. Branch*, 244 Va. 185, 190 (Va. 1992)); *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (N.Y. 2022) (setting forth New York law[8] breach of contract elements under New York Law); Employment Agreement § 2 (employee restricted from using, sharing or disclosing Bowlero's Confidential Information as defined therein), § 10 ("I will return all documents and other tangible materials, whether or not pertaining to Work Products or Confidential Information, furnished to or accessed by me or produced or obtained by me in connection with my work hereunder upon my termination of employment or at any time upon request."). Thus, Tanase's perjury and otherwise incredibly testimony is seriously interfering with the truth-seeking aspect of the judicial process.

---

[8] Tanase's Employment Agreement is "governed by the laws of the State of New York, without regard to conflicts of laws." Employment Agreement, § 19; *see East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012) ("As a federal court exercising supplemental jurisdiction, the Court applies the choice of law rules of the forum state."); *Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 787 (4th Cir. 1987) ("Virginia conflicts of law rules generally honor contractual choice of law provisions.").

Moreover, Tanase's misconduct is further prejudicial to the judicial process as it "demonstrate[s] a flagrant disregard for the court and the discovery process." *Grethen v. Clarke*, 2015 WL 13387681 (E.D. Va. Nov. 24, 2015) (sanction of dismissal warranted), aff'd, 672 F. App'x 300 (4th Cir. 2017). Given that it now "is nigh impossible to separate out the infection that" Tanase "has created and spread through the course of this discovery," it will be "extremely difficult" for the Court "to trust anything" Tanase "represent[s], even if those representations occur[] under oath." *Brooks*, 2018 WL 7488924, at *18. Accordingly, the integrity of the judicial process has been "so greatly frustrated as to warrant the" most "severe sanction"—in this case, default. *Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243, 255 (4th Cir. 2013) (citing *Chambers*, 501 U.S. at 45).

(d) *Tanase's Bad Faith is Prejudicial To Bowlero*

Bowlero suffers severe prejudice if Tanase is allowed to continuously change his story when he realizes his past testimony creates additional legal problems for him. In this state, Bowlero "cannot adequately prepare for trial nor can it have any confidence that" Tanase "will not lie again." *Brooks*, 2018 WL 7488924, at *18. Moreover, counsel for both parties spent significant time prior to Tanase's deposition considering how his exercise of the Fifth Amendment would be dealt with during that deposition. Indeed, that is partly why this Court requested that the deposition be held in the Courthouse, with the Honorable Judge Mark Colombell available to address roadblocks relating to that assertion.

(e) *Other Sanctions Will Not Fully Rectify Tanase's Wrongs*

Sanctions other than default will not adequately compensate Bowlero or deter similar conduct in the future, especially where, as here, Tanase only came clean with regard to his perjurious statements when ordered to do so by the Court. The only way to fully deter similar conduct and "to fully rectify this fraud" is to ensure Tanase does not realize any perverse incentives

15

for his false, shifting testimony and delay. *Salgam*, 2020 WL 6322857, at *4-5; *Brooks*, 2018 WL 7488924, at *18 ("lesser sanctions would not achieve the requisite level of deterrence nor would it cure [plaintiff's] harm.").

(f) *The Public Interest Counsels Default*

Finally, "there certainly is a public interest in safeguarding the integrity of the judicial process and not allowing litigants to enjoy the privilege of the courthouse after openly refusing to obey the Court's rules and orders." *Brooks*, 2018 WL 7488924, at *18. The public further has an interest in protecting the solemnity of the Court's record in this case rather than treating it like a personal dry-erase board. These interests are strong enough to offset even the "strong policy that cases be decided on the merits." *Shaffer*, 11 F.3d at 462. This is the exceptional case where default judgment as to liability is warranted.

### 2. In The Alternative, The Court May Preclude Tanase From Affirmatively Testifying On Material Issues

Should the Court deny Bowlero's request for an entry of default judgment, Bowlero requests that the Court preclude Tanase from offering as evidence his affirmative testimony going forward in this matter. *Baker v. Curtis W. Key Plumbing Contractors, Inc.*, 2016 WL 11672046, at *9 (E.D. Va. Dec. 8, 2016) (prohibiting use of certain evidence speaking to specific material purpose under Court's inherent powers); *White*, 2014 WL 12591153, at *1 (federal courts may "exclude evidence" as sanction tailored to remedy bad faith conduct). This sanction is well within the Court's discretion, particularly given Tanase's showing that his statements under oath have little to no evidentiary value.

### III. CONCLUSION

For the foregoing reasons, Bowlero respectfully requests that this Court grant Bowlero's Motion for Sanctions, enter default judgment in Bowlero's favor as to liability, or, alternatively, enter an order precluding Tanase's further affirmative testimony.

Dated: April 4, 2024

Respectfully submitted,

**AMF BOWLING CENTERS, INC. and BOWLERO CORP.**

*/s/ Neil S. Talegaonkar*
Randy C. Sparks, Jr. (VSB No. 40723)
Neil S. Talegaonkar (VSB No. 44589)
Catrina C. Waltz (VSB No. 98446)
KAUFMAN & CANOLES, P.C.
1021 East Cary Street, Suite 1400
Richmond, VA 23219
Phone: (804) 771-5700
Fax: (888) 360-9092
Emails: rcsparks@kaufcan.com
nstalegaonkar@kaufcan.com
ccwaltz@kaufcan.com

Alex Spiro (NY Bar No. 4656542)
(admitted *Pro Hac Vice*)
Hope D. Skibitsky (NY Bar No. 5362124)
(Admitted *Pro Hac Vice*)
Daniel Sisgoreo (NY Bar No. 5812417)
(Admitted *Pro Hac Vice*)
Cara Mund (NY Bar No. 6069199)
(Admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
Emails: alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
danielsisgoreo@quinnemanuel.com
caramund@quinnemanuel.com

*Counsel for Plaintiffs AMF Bowling Centers, Inc. and Bowlero Corp.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 4th day of April, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel for Defendant Thomas Tanase:

I. Scott Pickus, Esq.
10132 West Broad Street
Glen Allen, VA 23060
Email: spickus1@comcast.net

Alan Jay Cilman, Esq.
10474 Armstrong Street
Fairfax, VA 22030
Email: acilman@aol.com

              */s/ Neil S. Talegaonkar*
              Neil S. Talegaonkar (VSB No. 44589)
              KAUFMAN & CANOLES, P.C.
              1021 East Cary Street, Suite 1400
              Richmond, VA 23219
              Phone: (804) 771-5700
              Fax:  (888) 360-9092
              Email: nstalegaonkar@kaufcan.com