UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC.; § | CIVIL ACTION NO. |
| BOWLERO CORP. § | |
| § | 3:23-cv-00448-HEH |
| *Plaintiffs*, § | |
| § | |
| vs. § | |
| § | |
| THOMAS TANASE, § | |
| § | |
| *Defendant.* § | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIM AND TO ADD AN ADDITIONAL PARTY**

Plaintiffs AMF Bowling Centers, Inc. ("AMF") and Bowlero Corp. (with AMF, "Bowlero" or the "Company") respectfully submit this memorandum of law in support of their opposition to Defendant Thomas Tanase's ("Defendant" or "Tanase") motion for leave to file counterclaim and to add a party ("Motion").

## PRELIMINARY STATEMENT

During his March 11, 2024 deposition, Tanase admitted that on June 1, 2023 he told Brett Parker—the same individual he now attempts to drag into this Action—that if he were to sue Bowlero, "it would be strictly to fuck people over." ECF No. 96-1 at 168:1-6. In the months that followed, Tanase has advanced no credible defense to Bowlero's claims. Instead, as detailed in Bowlero's sanctions motion, he repeatedly perjured himself and cycled through at least five attorneys over the span of nine months, one of whom withdrew for ethical reasons. Now, just days before the discovery deadline, Tanase seeks to assert the baseless counterclaims he threatened last June, in a bad-faith effort to derail the progress of this Action and delay Bowlero's entitlement to relief. Tanase has not made *any* showing—let alone the good faith one that the Federal Rules of Civil Procedure and this Court's orders require—that he should be permitted to file his

-1-

counterclaims around *five months* after the deadline to do so and *five days* before fact discovery will close.  Further, Tanase's counterclaims are fatally flawed, both on the facts and the law, and thus would be futile.  Specifically, his retaliation claim is procedurally deficient, having not alleged exhaustion of administrative remedies, and his extortion claim is brought under a criminal statute that offers no private right of action.

Accordingly, Tanase's motion for leave to file counterclaim and to add a new party should be denied in its entirety with prejudice.

## STATEMENT OF FACTS

Bowlero brought this action on July 12, 2023, shortly after discovering that its former Chief Information Officer, following his resignation from the Company, unlawfully and without authorization repeatedly accessed the emails of Bowlero's Chief Executive Officer and copied and erased the contents of a Bowlero-issued laptop before returning it to the Company.  Bowlero accordingly asserted claims for violations of the Computer Fraud and Abuse Act (the "CFAA") and the Virginia Computer Crimes Act (the "VCCA"); trespass to chattels; and breaches of Tanase's employment agreement.

Tanase and his counsel have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* ECF No. 59-4 at 4 (the Court found Tanase waived privilege over this document, ECF No. 71).  In a discussion over which Tanase waived privilege, one of Tanase's lawyers stated:



*Id.* at 5 (emphasis added).

The Court issued a Scheduling Order pursuant to Fed. R. Civ. P. 16(b), finalized on October 6, 2023, providing: 1) "an answer or responsive pleading shall [be filed] within eleven (11) days from" September 8, 2023; "any motion to join additional parties shall be filed within fifteen (15) days of the date of" September 8, 2023; and "[m]otions to amend pleadings shall be filed in accordance with Federal Rule of Civil Procedure 15(a)." ECF No. 42-1. "Any such motions filed which do not comply with the above will be entertained only ***upon the showing of good cause***." *Id*. (emphasis added). The Court thereafter denied Tanase's motion to dismiss, ECF Nos. 33, 44, 47, and Bowlero filed an Amended Complaint on October 16, 2023. ECF No. 51. Tanase filed an Amended Answer on October 25, 2023, ECF No. 55, which did not include counterclaims.

On April 3, 2024, just three business days before the completion of discovery, Tanase filed this belated motion. To avoid further delays in the resolution of this Action, Bowlero respectfully files its opposition today, April 4, and seeks an expedited hearing on Tanase's motion.

## **LEGAL STANDARD**

Motions for leave to amend or add "counterclaims are subject to the same standards as all motions for leave to amend pleadings," including Rule 15 and, when applicable, Rule 16. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706-07 (D. Md. 2011). Ordinarily, a party should "freely" be given leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Such a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001)); *Sandcrest Outpatient Servs., PA. v. Cumberland Cty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1148 (4th Cir. 1988) ("[A]lthough a district court's decision to deny leave to amend a pleading rests within its sound discretion, . . . denial of leave to amend . . . must be based on 'a showing of

-3-

prejudice, bad faith, futility, or dilatoriness associated with the motion.'") (quoting *Ward Elec. Serv. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987)).

However, if a proposed amendment would interfere with an established scheduling order, a court may grant the motion "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *Nourison*, 535 F.3d at 298 ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings. This result is consistent with rulings of other circuits."). When considering whether a movant has shown "good cause" for an untimely amendment, a court should primarily consider the movant's diligence. *Reynolds v. USAA Life Ins. Co.*, 2023 WL 4535870 (E.D. Va. Feb. 23, 2023) (Hudson, J.) (quoting *Montgomery v. Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006)).

## ARGUMENT

Aside from being wrong on the facts[1] and misstating the law, Tanase's arguments for leave to file his counterclaims and to add an additional party should be denied with prejudice for four reasons: Tanase has failed in the extreme to diligently seek his amendments and counterclaims; the proposed amendments are entirely futile and frivolous; the circumstances indicate these filings are not brought in good faith; and such untimely, baseless filings would prejudice Bowlero.

---

[1] Bowlero vehemently disagrees with the misstatements and mischaracterizations set forth in Tanase's proposed Counterclaim, but as these are not the nub of this Motion, it does not address them, unless relevant to the issue before the Court. That said, Bowlero reserves all rights and waives none.

**A. Tanase Did Not Diligently Bring His Belated Motion And So Fails To Demonstrate Good Cause Under Rule 16(b) Necessary To Amend Now.**

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery*, 182 F. App'x at 162. Nearly nine months have passed since Bowlero initiated this action. Tanase and his legal counsel ████████████████████████████████████ ████, so as in *Reynolds*, the "proposed amendment does not appear to result from newly discovered facts." 2023 WL 4535870, at *2. Tanase already amended his Answer once. Even charitably interpreted in light of Bowlero's October 16, 2023 Amended Complaint, the latest Tanase could possibly have brought his counterclaims without being subject to Rule 16(b)(4) and the Scheduling Order's "good cause" requirement would have been 21 days from that date—that is, November 6, 2023. Instead, Tanase filed his amended Answer on October 25, 2023, with no counterclaims to boot. And on that date, the facts and allegations on which Tanase now relies to bring his counterclaims were known to Tanase. Tanase admitted as much during his March 11, 2024 deposition when pressed about his counsel's ████████████████████████████████████████. ECF No. 96-1 at 201:6-24. Indeed, during his deposition, Tanase admitted that he believed there was a "possible counterclaim …. for retaliation. But I didn't file that." *Id.* at 201:15-24.

Tanase cannot use the entry of new counsel as grounds for good cause. On Friday, February 23, 2024, just two business days preceding Tanase's mutually agreed upon deposition date, Tanase's initial counsel, Jay Igiel, informed Bowlero that he was withdrawing because he had an ethical obligation to do so. *See* ECF Nos. 73, 74, 76. Both Mr. Igiel and new attorney Daniel Kim have now withdrawn from the case. ECF Nos. 79, 98. Following his deposition, Tanase once again obtained two new counsel. On April 1, 2024, Daniel Kim, Tanase's counsel

who attended and defended Tanase's deposition, moved to withdraw.[2] ECF No. 98. Standing alone, new counsels' entry does not "justify a finding of good cause." *Sall v. Bounassissi*, 2011 WL 2791254, at *3 (D. Md. July 13, 2011). Because "a party voluntarily chooses his attorney as his representative in the action, … he cannot later avoid the consequences of the acts or omissions of this freely selected agent." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010). This is, of course, especially the case where Tanase is himself to blame for his initial counsel's withdrawal.

Rather than move in accordance with Schedule A and the Federal Rules, Tanase waited until ***after*** his deposition and ***just four business days*** before the close of discovery to so move—149 days after November 6, 2023 to be exact. The information necessary to evaluate whether to bring these claims was fully available to Tanase, and he has "not pointed to any reason why this was not discernible prior to discovery." *Reynolds*, 2023 WL 4535870, at *3. "Given the timing of [Tanase's] [m]otion and how far the litigation has progressed," the Court can only find that "Tanase ha[s] not acted diligently in filing [his] last-minute Motion and ha[s] also not provided good cause as to why amendment is necessary." *Id.*

**B.     Tanase's Proposed Amendments Are Futile**

Amendment is futile under Rule 15(a) when a proposed amended complaint fails to state a claim. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Whether a complaint fails to state a claim, such that amendment would be futile, is analyzed under Rule 12(b)(6). Thus, the "[f]actual allegations [in the proposed pleading] must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[2] In less than nine months, two of Tanase's solo attorneys have withdrawn from representing him. Mark Rash, Tanase's third attorney, never filed an appearance in this matter. Therefore, he was not required to file a motion to withdraw.

(citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* While well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, legal conclusions do not enjoy the same deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Tanase's counterclaims are futile because they are due for dismissal under Rule 12(b)(6).

### 1. Tanase's Retaliation Claim Is Futile

Tanase's retaliation claim is fatally flawed and thus futile. Aside from being a factual fantasy, this claim is procedurally improper. Before filing suit under the ADEA,[3] "a plaintiff must exhaust [his or her] administrative remedies by bringing a charge with the EEOC," *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC must issue a "right to sue letter" or the claim is subject to dismissal. *Orth v. Kontane Logistics, Inc.*, 2022 WL 2155287, at *3 (D.S.C. June 15, 2022). Here, Tanase nowhere asserts the EEOC has provided him such a letter (because it has not), so his proposed counterclaim is futile on this ground alone.

But *even if* the EEOC had issued Tanase a right to sue letter, that letter would not apply to his claim for retaliation. That is because "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [discrimination or retaliation] lawsuit." *Id.* at 963. Consequently, "[t]he steps a plaintiff must take to exhaust her administrative remedies before raising a claim of retaliation differ

---

[3] The same framework is used to address both Title VII and ADEA claims. *See e.g.*, *Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998)

depending on when the retaliation occurred relative to the filing of an EEOC charge alleging discrimination." *Triplett v. N. Carolina Dep't of Pub. Safety*, 2017 WL 119483, at *4 (W.D.N.C. Jan. 10, 2017). "[I]f the alleged retaliation occurred prior to a plaintiff filing an EEOC charge, plaintiff must include an allegation of retaliation in her EEOC charge to satisfy the exhaustion requirement." *Id.* at *4 (citing Miles v. Dell, Inc., 429 F.3d 480 (4th Cir. 2005) (in concluding that plaintiff failed to exhaust administrative remedies for pre charge retaliation claim, noting plaintiff failed to check the retaliation box on his EEOC charge and nowhere included underlying retaliation facts)).[4] Here, the purported "retaliation" —Bowlero's July 12, 2023 suit—occurred *before* Tanase filed his charge. ECF No. 1. Tanase nowhere mentions this suit or its underlying allegation in his August 10, 2023 EEOC charge, nor did Tanase check the retaliation box in that charge. *See* ECF No. 100-1 at 37-39.[5] Tanase's claim is thus due for dismissal for failure to exhaust.

Tanase's contention in the Motion—that this case was brought as retaliation against him to work an end run around the EEOC, ECF No. 100-1 ¶ 78—is absurd and makes no sense. Tanase filed his EEOC charge *after* Bowlero filed this lawsuit, and litigates it to this day, so there can be no causal link between filing the charge and the suit—as is required for a retaliation claim. *Buchhagen v. ICF Int'l, Inc.*, 650 F. App'x 824, 828 (4th Cir. 2016) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc)) (cleaned up).

---

[4] In contrast, when the alleged retaliation occurs after the plaintiff files their EEOC charge, the retaliation grows out of the discrimination allegation and the plaintiff may raise her claim of retaliation for the first time in district court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 302-304 (4th Cir. 2009).

[5] Ordinarily, a Court must consider only those well-pleaded allegations in the four-corners of the complaint, but where, as here, there are documents attached to the complaint or the motion which are integral to the complaint and authentic, a district court may consider those attachments without converting a motion to dismiss into a motion for summary judgment. *See Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020), aff'd, 995 F.3d 134 (4th Cir. 2021). Here, Tanase attaches his EEOC charge to the proposed counterclaims, so the Court may consider it for purposes of this motion. ECF No. 100-1, at 37-39.

## 2. Tanase's Extortion Claim Is Futile And Frivolous

Tanase's extortion claim is futile. The Virginia extortion statute Tanase relies on in his proposed counterclaim is Va. Code Ann. § 18.2-59. ECF No. 100-1 ¶ 54. Va. Code Ann. § 18.2-59 is a criminal statute: "Any person who [commits the crime of extortion as defined in Virginia] is guilty of a Class 5 felony." *Id.* Virginia law, however, does not "contain[] a private right of action for extortion [under Va. Code Ann. § 18.2-59]" whether for damages or injunctive relief. *Pilz v. Pere*, 2008 WL 11512195, at *2 (E.D. Va. Mar. 5, 2008) (citing *Ritholz v. Commonwealth of Virginia*, 184 Va. 339, 349 (1945)). Consequently, Tanase's civil extortion claim is futile as a matter of law. *Rumfelt v. Jazzie Pools, Inc.*, 2011 WL 2144553, at *2-3 (E.D. Va. May 31, 2011) (dismissing claim under Rule 12(b)(6) where there was no private right of action); *see also Cherrie v. Va. Health Services, Inc.*, 292 Va. 309, 312 (affirming dismissal for failure to state claim because statute had no private right of action).

Even were there a private right of action, Tanase would still fail to state a claim under Va. Code Ann. § 18.2-59. The extortion statute provides that "[a]ny person who threatens injury to the character, person, or property of another person" or "accuses him of any offense" "and thereby extorts money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, is guilty of a Class 5 felony." *Id.*

Tanase's claim fails at the outset with his inability to show the requisite "wrongfulness" to support an action under the extortion statute. *See Stein v. Commonwealth*, 402 S.E.2d 238, 241 (Va. Ct. App. 1991) (centering extortion around whether value was obtained by "*wrongful* methods") (emphasis added); *see also Wood v. Commonwealth*, 382 S.E.2d 306, 308 (Va. Ct. App. 1989) ("the decisive element of extortion is obtaining money from a victim through threats"). As such, any threat constituting extortion must necessarily be wrongful, as opposed to a discussion of

the natural progression of events in the occurrence of non-compliance with a lawful, rightful request. *See Strohecker v. Commonwealth*, 475 S.E.2d 844, 852 (Va. Ct. App. 1996) ("the gravamen of extortion is *wrongfully* obtaining a benefit.") (emphasis added); *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 585 F. Supp. 2d 789, 799 (E.D. Va. 2008) (analysis focusing on "extortionate means"). Therefore, allegations supporting a claim of extortion must necessarily include evidence that the defendant engaged in wrongful means. Tanase fails to do just this, as no such evidence exists.

Instead, what the transcript attached to the Motion depicts is a conversation between Mr. Parker and Tanase regarding the potential consequences of Tanase's own actions, as well as an "olive branch" extended on behalf of Bowlero by Mr. Parker to Tanase if he were to confess to his computer hacking. ECF No. 100-1, at 29-36. Far from wrongfully seeking to obtain a benefit from Tanase, Mr. Parker—who Tanase has testified he has deep respect for, ECF No. 96-1 at 29:22-24—acknowledges that he is "trying to help." *Id.* These are all actions which, in the face of Tanase's hacking of Bowlero computer systems, neither Bowlero nor Mr. Parker were required to do. Indeed, what Tanase suggests is "extortion" is obviously no such thing. Hence, even if Tanase had a private right of action for an extortion claim, the elements of such a claim are not met here. *See Smithfield Foods*, 585 F. Supp. 2d at 799; *Stein*, 402 S.E.2d at 241. As such, Tanase's frivolous extortion claim plainly violates Rule 11.

### 3. Tanase's Amendments Are Futile Because They Are Not Defenses

Tanase routinely refers to his proposed counterclaims as "defenses" which he must be able to assert to defend his case. This reflects a misunderstanding of the law. Affirmative claims for relief are not "defenses." Even if these frivolous claims had merit, they are not a "defense" to Tanase's computer hacking or breaches of his contract. It is simply no defense to hacking into the

emails of a Company's CEO, or to copying over 2,000 documents from a company computer onto a personal drive, to say that you were mistreated. An allegation of mistreatment cannot save Tanase from his failure to mount *any* factual defense beyond conclusory denials—after previously invoking the Fifth Amendment to the same—as to why two IP-addresses for which he is the named subscriber repeatedly and obsessively accessed Bowlero's CEO's email after the Company accepted Tanase's resignation. Tanase shifted tactics regarding asserting the Fifth Amendment just as he is attempting to do now by adding these counterclaims.

C. **Tanase's Proposed Amendments Are Made In Bad Faith**

Now that Tanase has been unable to defend himself on the merits, these exceedingly delayed counterclaims ███████████████████████████████████ ████ or otherwise his attempt to make good on his claim to Mr. Parker on the June 17 recorded phone call. ECF No. 96-1 at 168:3-7. Tanase talks out both sides of his mouth on this count: on one hand, he states he has great respect for Mr. Parker, *Id.* at 227:13-18, and on the other, he files a baseless civil claim against him for criminal extortion. These counterclaims are nothing more than a continuation of the pattern of bad faith conduct Tanase has exhibited throughout this case.

D. **Tanase's Proposed Amendments Prejudice Bowlero**

Tanase further states in his Motion that because Bowlero was aware that Tanase has mentioned counterclaims in the past, there is no prejudice to them were they allowed now. Not so. Discovery to date—which closes on Monday— was conducted based on Bowlero's four claims, not Tanase's proposed counterclaims. ECF No. 42-1. Adding new counterclaims to the case will require extending other case scheduling deadlines in light of Bowlero's need to bring a motion to dismiss. This would add to Bowlero's already considerable attorney's fees in this case and stave off the relief which Bowlero seeks. Such delay has consequences for Bowlero's public reputation as the odor of uncertainty clouding Tanase's baseless allegations looms.

## CONCLUSION

For all of these reasons, Bowlero respectfully requests that Tanase's motion for leave to file counterclaim and to add an additional party be denied with prejudice. Bowlero further requests an expedited hearing on this Motion to avoid further unnecessary delay to this matter's resolution.

**Dated**: April 4, 2024

Respectfully submitted,

**AMF BOWLING CENTERS, INC. and BOWLERO CORP.**

*/s/ Neil S. Talegaonkar*
Randy C. Sparks, Jr. (VSB No. 40723)
Neil S. Talegaonkar (VSB No. 44589)
Catrina C. Waltz (VSB No. 98446)
KAUFMAN & CANOLES, P.C.
1021 East Cary Street, Suite 1400
Richmond, VA 23219
Phone: (804) 771-5700
Fax: (888) 360-9092
rcsparks@kaufcan.com
nstalegaonkar@kaufcan.com
ccwaltz@kaufcan.com

Alex Spiro (NY Bar No. 4656542) (admitted *Pro Hac Vice*)
Hope D. Skibitsky (NY Bar No. 5362124) (admitted *Pro Hac Vice*)
Daniel Sisgoreo (NY Bar No. 5812417) (admitted *Pro Hac Vice*)
Cara Mund (NY Bar No. 6069199) (admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
danielsisgoreo@quinnemanuel.com
caramund@quinnemanuel.com

*Counsel for Plaintiffs AMF Bowling Centers, Inc. and Bowlero Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel for Defendant Thomas Tanase:

I. Scott Pickus, Esq.
10132 West Broad Street
Glen Allen, VA 23060
spickus1@comcast.net

Alan Jay Cilman, Esq.
10474 Armstrong Street
Fairfax, VA 22030
acilman@aol.com

/s/ *Neil S. Talegaonkar*
Neil S. Talegaonkar (VSB No. 44589)
Kaufman & Canoles, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, Virginia 23219

Telephone: (804) 771-5700
Facsimile: (888) 360-9092
Email: nstalegaonkar@kaufcan.com