**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| AMF BOWLING CENTERS, INC., *et al.*, | ) )  ) |
| Plaintiffs, | ) ) |
| v. | )  Civil Action No. 3:23-cv-448–HEH ) |
| THOMAS TANASE, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**
**(Awarding Damages and Final Judgment)**

THIS MATTER is before the Court on the awarding of monetary damages, injunctive relief, and attorneys' fees. Also before the Court is Defendant's Motion to Withdraw (ECF No. 205). On June 13, 2024, this Court granted Plaintiffs AMF Bowling Centers, Inc. and Bowlero Corp.'s (collectively, "Plaintiffs" or "Bowlero") Motion for Summary Judgment (ECF No. 119) and Amended Motion for Sanctions (ECF No. 111). (*See* Summ. J. Mem. Ops. and Order, ECF Nos. 181–183.) The Court ordered a series of supplemental briefings to determine what relief is appropriate. The parties have filed memoranda in support of their positions, and the Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. Civ. R. 7(J).

## I. BACKGROUND

The factual dispute has been well documented by the Court in its previous opinions. (Sealed Mem. Op., ECF No. 181; Redacted Mem. Op., ECF No. 182.)[1] Defendant Thomas Tanase ("Defendant") was employed with Bowlero since 2002, and he worked his way up to becoming the Chief Information Officer ("CIO"). Eventually, Defendant's relationship with his supervisor and Bowlero soured, resulting in the end of his employment. Despite no longer working for Bowlero, Defendant proceeded to repeatedly access Bowlero's servers and computer systems without authorization. Defendant acted maliciously, attempting to lower Bowlero's stock price and inflict harm on the company. Ultimately, Bowlero initiated this lawsuit to enjoin Defendant's conduct and to recover damages under state and federal law.

Over the course of this lawsuit, Defendant lied under oath during his deposition, submitted an affidavit to the Court that included false statements, and produced an eleventh-hour discovery disclosure of a doctored recording of him and a witness (the "June 17 recording"). Defendant then represented to this Court several conflicting and less-than-believable stories to explain the late disclosure and doctored June 17 recording. Ultimately, the Court found that Defendant, and not his former or current counsel, was responsible for his perjury, lies, and submission of fabricated evidence.

---

[1] Both the Sealed and Redacted Memorandum Opinions maintain the same pagination and are altogether identical in content. Accordingly, the Court makes no distinction between the Opinions when referencing its prior ruling.

On June 13, 2024, the Court granted summary judgment in favor of Plaintiffs. (ECF No. 183.) The Court also granted a motion for sanctions based on Defendant's egregious misconduct throughout this case. (*Id.*) Defendant moved the Court to reconsider its conclusion that Plaintiffs were entitled to attorneys' fees under the Virginia Computer Crimes Act ("VCCA"), Virginia Code § 18.2-15.1, *et seq.* (Mot. to Reconsider, ECF No. 189.) Upon reconsideration, the Court amended its previous ruling to permit only the recovery of costs under the VCCA. (Am. Summ. J. Mem. Op. and Order, ECF Nos. 194, 195.) The Court also amended its grant of Plaintiffs' Motion for Sanctions, finding an award of attorneys' fees was appropriate to remedy Defendant's continued egregious behavior throughout this case. (*Id.*) The Court now turns to what relief is appropriate.

In its ruling on summary judgment, the Court found Plaintiffs were entitled to the following relief under each count: Count I—Computer Fraud and Abuse Act, 18 U.S.C. § 1030—consequential damages and injunctive relief including the "cost[s] of investigating and identifying the CFAA offense" (Summ J. Mem. Op. at 18 (quoting *A.V. Ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009))); Count II—Virginia Computer Crimes Act—"costs of suit" (Am. Summ. J. Mem. Op. at 6, ECF No. 194); Count III—Trespass to Chattels—punitive damages (Summ. J. Mem. Op. at 24.); Count IV—Breach of Contract—injunctive relief and nominal damages (*Id.* at 26.); and Sanctions—attorneys' fees and costs related to Defendant's bad faith conduct, (Am. Summ. J. Mem. Op. at 8.).

3

## II. DISCUSSION

### A. Defendant Is Not Entitled to a Jury Trial

As an initial matter, Defendant contends that he is entitled to a jury trial on damages. (*See* ECF No. 187 at 2–9; *see also* ECF No. 199 at 1, 13.) The Court disagrees. First, where there is no genuine issue of material fact, there is no right to be heard by a jury—whether on liability or damages. *See Pine Ridge Coal Co. v. Loc. 8377, United Mine Workers of Am.*, 187 F.3d 415, 422 (4th Cir. 1999) ("[H]aving found no genuine issue as to any material fact regarding [the plaintiff's] damages, [the court] appropriately granted summary judgment in favor of [the plaintiff].").  Indeed, courts will award damages at summary judgment for violations of the CFAA when such damages are not in dispute. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1070 (9th Cir. 2016) (directing the district court to calculate damages under the CFAA); *accord Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 771 (N.D. Cal. 2017) (following the Ninth Circuit's mandate and calculating damages).  Where there is no genuine issue of material fact, a defendant is not entitled to dispute *ad nauseum* whether eligible damages under the CFAA—i.e., the costs of investigating and identifying the CFAA offense—were reasonable or not. *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174–75 (11th Cir. 2017) (affirming the district court's rejection of arguments that the plaintiff could not recover for allegedly unnecessary expenses incurred in the course of responding to the CFAA offense).  As described below, Defendant fails to present evidence placing any damages issue into genuine dispute.

Moreover, the Court not only granted summary judgment, but also entered a default judgment with Plaintiffs' Motion for Sanctions. For calculating damages on default judgment, the Court need only make the determination that damages are based on "an adequate evidentiary basis in the record for the award." *Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.*, 956 F. Supp. 2d 695, 705 (E.D. Va. 2013). The Court finds that both standards under summary judgment and default judgment are satisfied and the Court may appropriately calculate Plaintiff's damages.

### B. Monetary Relief as to Count I (Computer Fraud and Abuse Act ) and Count II (Virginia Computer Crimes Act)

Under the CFAA and VCCA, Plaintiffs are entitled to recover the costs they incurred in investigating and identifying the offenses. *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss . . . [may] obtain compensatory damages and injunctive relief or other equitable relief."); Va. Code § 18.2-152.12 ("Any person . . . may sue therefor and recover any damages sustained and the costs of suit. Without limiting the generality of the term, "damages shall include loss of profits."); *see also iParadigms*, 562 F.3d at 646 ("This broadly worded provision plainly contemplates consequential damages of the type sought by iParadigms—costs incurred as part of the response to a CFAA violation, including the investigation of an offense."). In total, Plaintiffs request $146,085.00 in costs and expenses under the CFAA and VCCA. (ECF No. 199 at 12.) This includes $69,378.84 for work performed by Sage Intelligence Group, LLC ("Sage") who investigated Defendant's access to Plaintiffs' systems, and $76,706.16 in other miscellaneous expenses by Plaintiffs, including transcript orders,

5

deposition services, litigation support, meals and travel expenses, and service of process. (Ex. D, ECF No. 196-4; ECF No. 202 at 13.)

Defendant vaguely asserts that some of the Sage expenses were "unnecessary, duplicative or unproductive." (ECF No. 187 at 3.) The only concrete example he identifies, however, is a $2,500 charge for providing testimony on July 27, 2023, for a hearing that was cancelled. (*Id.* (citing ECF No. 185-4 at 8).) In identifying this example, Defendant seemingly ignores the fact that this fee was *refunded* and not included in the total amount—as Raquel Busa clearly noted in her declaration. (*See* ECF No. 185-4 ¶ 4 ("The invoices total $71,878.74, with a $2,500 refund to be applied. Therefore, Bowlero incurred a total of $69,379.84 in fees . . . .").) Accordingly, Defendant has failed to offer any viable argument that the costs incurred by Sage were unreasonable, much less offer any evidence that places these costs into genuine dispute.[2] Thus, "[t]hese losses were incurred in the course of responding to the offense and are therefore compensable under the CFAA" and the VCCA. *Brown Jordan Int'l, Inc.*, 846 F.3d at 1175.

Defendant also disputes the remaining $76,706.16 requested for the miscellaneous costs Plaintiffs incurred in pursuing this action. (ECF No. 199 at 6.) He argues that

---

[2] Defendant argues that Plaintiffs' failure to supplement Defendant's discovery requests precludes the introduction of Sage's expenses as evidence for damages. (ECF No. 187 at 10–11.) Yet the assertion that Plaintiffs violated their obligations under Rules 26(a) and 37(c) has been waived. Defendant was on notice that Plaintiffs sought at least $50,000 for its investigation into Defendant's conduct. (*See* Ex. 32, Ex. A, ECF No. 126-7.) Nonetheless, Defendant waited until *after* the Court ruled against him and ordered supplemental briefing to raise the issue for the first time. This Court will not allow Defendant to continue to relitigate issues well after they were ripe.

"meals during travel, express mail, messenger, document reproduction, videotaping, travel, color document reproduction, word processing, hotels, out of town travel, document services, air travel, and 1 [inch] binder" do not constitute "court costs." (*Id.*) Plaintiffs respond that costs "routinely include various expenses related to, for example, travel and depositions." (ECF No. 202 at 12 (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002)).) Plaintiffs rely, however, on case law which pertains to awarding costs associated with attorneys' fees; recoverable costs under the CFAA and the VCCA are distinct from those costs ordinarily recoverable in an award of attorneys' fees. *See U.S. ex rel. LeFan v. Gen. Elec. Co.*, No. CIV.A. 4:00-CV-222, 2008 WL 152091, at \*6 (W.D. Ky. Jan. 15, 2008) ("Thus, courts have found that for expenses for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, and courier services are recoverable as part of *attorneys' [sic] fees awards*." (emphasis added)), *aff'd in part and remanded*, 397 F. App'x 144 (6th Cir. 2010). Under the CFAA and VCCA, Plaintiffs are entitled to consequential damages including the "costs of investigating and identifying the CFAA offense," *iParadigms*, 562 F.3d at 646, and "costs of suit," Virginia Code § 18.2-152.12. (*See* Summ. J. Mem. Op. at 18; Am. Mem. Op. at 6.) Virginia law limits costs of suit to "those costs essential for prosecution of the suit, such as filing fees or charges for service of process." *Chacey v. Garvey*, 781 S.E.2d 357, 361 (Va. 2015). Although the CFAA entitles Plaintiffs to consequential damages, this does not include costs associated with the prosecution of the CFAA action—only those costs "incurred as part of the response to a CFAA violation." *NCMIC Finance Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065 (S.D.

7

Iowa 2009) (quoting *iParadigms*, 562 F.3d at 646). Accordingly, many of the miscellaneous expenses Plaintiffs request are related to the prosecution of this case, not responding to the offenses, and are therefore not recoverable, at least under the CFAA and VCCA.[3] Consequently, the Court finds that Plaintiffs are entitled to $69,378.84 for investigating services performed by Sage, $1,003.74 for filing fees, and $3,634.13 for service of process—for a total of $74,016.71 owed under the CFAA and VCCA.

### C. Punitive Damages as to Count III (Trespass to Chattels)

In Virginia, punitive damages are limited to a maximum of $350,000. Va. Code § 8.01-38.1. Defendant objects to Plaintiffs' request for this amount, raising as his sole defense the argument that punitive damages is a quintessential jury question. (ECF No. 187.)

Although punitive damages are typically a jury question, they may also be awarded at summary judgment. *See, e.g., Jordan v. Osmun*, No. 1:16-CV-501, 2017 WL 2837143, at *8 (E.D. Va. June 29, 2017) (awarding punitive damages at summary judgment); *Visual Telecomms. Network, Inc. v. Daie*, No. 1:08-CV-01188 (IDD), 2009 WL 10730880, at *3 (E.D. Va. June 12, 2009) (same). To determine punitive damages under Virginia law, courts judge "the request for damages based on the standard employed to review a punitive damages award on remittitur." *Jordan*, 2017 WL 2837143, at *8 (citing *Coalson v. Canchola*, 754 S.E.2d 525, 528 (Va. 2014)). On remittitur, the Court considers four (4) factors: (1) the "reasonableness between the

---

[3] However, the Court will address whether they may be recoverable as part of the Court's sanction.

damages sustained and the amount of the award and the measurement of punishment required;" (2) "whether the award will amount to a double recovery;" (3) "the proportionality between the compensatory and punitive damages;" and (4) "the ability of the defendant to pay." *Poulston v. Rock*, 467 S.E.2d 479, 484 (Va. 1996); *see Jordan*, 2017 WL 2837143, at *8. Plaintiffs contend that the maximum award is warranted here, and the Court agrees.

As the Court discussed in its Memorandum Opinion on summary judgment, Defendant accessed Plaintiffs' devices or servers after his employment, despite knowing he was not permitted to do so, downloaded thousands of files, and wiped the contents of his laptop to evade detection. (*See* Summ. J. Mem. Op. at 20–21.) Moreover, Defendant celebrated decreases in Bowlero's stock price and repeatedly made vindictive comments about what he intended to do against Bowlero. (*See id.* at 9 (noting Defendant made statements including "I am going to war," "They are fucked," that he "would seek retribution against [Plaintiffs] for their wrongful treatment," and that if he were to sue Bowlero, "it would be strictly to fuck people over.").) These statements included threats to "go nuclear" and claims that he would discuss Bowlero's "security and data breach"—that Defendant perpetrated—with the "Board of Directors, SEC, and shareholders" which would "inevitably cause a negative and irreversible backlash to the already fragile reputation of Bowlero." (Ex. 33, ECF No. 121-5.)

The Court believes that a punitive award of $350,000 fulfills the purpose of punitive damages "to provide 'protection of the public, . . . punishment to [the] defendant, and . . . a warning and example to deter him and others from committing like

offenses.'" *Coalson*, 754 S.E.2d at 528 (quoting *Huffman v. Love*, 427 S.E.2d 357, 361 (Va. 1993)).  The record reflects that Defendant acted beyond that of a mere begrudged former employee; instead, Defendant was fueled by ill will and spite and his unauthorized access furthered his goal of "retribution."  This sort of behavior is wholly unacceptable and deserving of substantial punishment, particularly in situations such as this, where the public and a publicly traded company's reputation can suffer—in Defendant's own words—"irreversible backlash." (*See* Ex. 33, ECF No. 121-5.)

Moreover, an award of $350,000 is proportionally reasonable where Defendant caused at least $69,378.84 in damages.  *See Coalson*, 754 S.E.2d at 254 (reinstating a $100,000 punitive damages award where the compensatory damages were $5,600, creating a 1:17.86 ratio between punitive and compensatory damages).[4]  Accordingly, the Court finds that an award of $350,000 in punitive damages is reasonable and proportional considering Plaintiffs' damages, Defendant's egregious misconduct and intent underlying the offense, and the need to punish Defendant.[5]  Because "the Court only awards the damages 'to provide deterrence and retribution, as well as to punish and prevent future conduct,'" the punitive damages will not amount to double recovery. *Jordan v. Osmun*, No. 1:16-CV-501, 2017 WL 2837143, at *8 (E.D. Va. June 29, 2017) (quoting *Hughston v. New Home Media*, 552 F. Supp. 2d 559, 569 (E.D. Va. 2008)); *see Baldwin v. McConnell*, 643 S.E.2d 703, 659 (Va. 2007).

---

[4] Here, the ratio between the punitive damages and compensatory damages is approximately 1:5.

[5] Defendant has not addressed whether he is capable of paying any damages. *See Coalson*, 754 S.E.2d at 528.

**D. Injunctive relief as to Count I (Computer Fraud and Abuse Act ), Count II (Virginia Computer Crimes Act), and Count IV (Breach of Contract)**

Plaintiffs request two forms of injunctive relief: (1) a permanent injunction preventing further breaching of the CFAA, the VCCA, and the terms of Defendant's Employment Agreement; and (2) "an anti-suit injunction preventing Defendant from pursuing state court litigation that seeks to challenge or undermine the legal effect of this Court's existing rulings." (ECF No. 185 at 14.) Defendant offers no argument in opposition, noting only that nominal damages would be inappropriate. (ECF No. 187 at 8.)[6] The Court considers whether such relief is appropriate.

To obtain a permanent injunction, Plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Wudi Indus. (Shanghai) Co., Ltd. v. Won*g, 70 F.4th 183, 190 (4th Cir. 2023) (quoting *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006)).

The Court finds Plaintiffs have met their burden to permanently enjoin Defendant from further breaching the CFAA, VCCA, and the terms of his Employment Agreement. First, Plaintiffs have suffered irreparable harm from Defendant's unauthorized access to Bowlero computer systems. *See Microsoft Corp. v. Does 1-2*, 2022 WL 18359421, at *4

---

[6] Although Defendant does not offer any argument opposition to Plaintiffs' requests, the Court is hesitant—particularly absent affirmative consent—to grant such equitable relief without its own independent determination of whether it is appropriate.

(E.D. Va. Dec. 27, 2022), *report and recommendation adopted*, Case No. 121-cv-822, 2023 WL 289701 (E.D. Va. Jan. 18, 2023). Second, monetary damages and other remedies are inadequate to make Plaintiffs whole because further breaches can damage Bowlero's reputation and have lingering and permanent effects on the company and its ability to raise capital through capital markets. Third, Defendant has no legitimate interest in continued illicit access and thus, he suffers no hardship from being precluded from doing so. *See id.* Finally, the public's interests would be served by enforcing the law and requiring Defendant to abstain from further illicit activity. *See Microsoft Corp. v. Does*, Case No. 1:22-cv-607, 2024 WL 1708328, at *12 (E.D. Va. Jan. 10, 2024) ("Enforcing statutes, such as the Lanham Act and the CFAA, that are designed to protect the public, weigh in favor of granting injunctions to prevent the furtherance of and profit from false or misleading representations."), *report and recommendation adopted sub nom. Microsoft Corp. v. Does 1-2*, Case No. 1:22-cv-607, 2024 WL 1708323 (E.D. Va. Jan. 30, 2024). Accordingly, the Court will enter a permanent injunction enjoining Defendant from further violations of the CFAA and the VCCA, and from breaching his Employment Agreement.

Turning to Plaintiffs' request for an anti-suit injunction, the Court finds that a permanent injunction would not be appropriate at this time. Four (4) days after granting summary judgment in favor of Plaintiffs, Defendant filed a lawsuit against Bowlero and Brett Parker, Bowlero's CFO at the time, alleging a series of claims including extortion,

defamation, intentional infliction of emotional distress, and negligence.[7]  The lawsuit was premised on the facts underlying this case, for example, Defendant alleged that he was defamed by Bowlero "falsely accus[ing]" Defendant of violating the CFAA and VCCA. Such allegations are strikingly frivolous considering this Court found *only four (4) days earlier* that Defendant *did* violate the law.  Plaintiffs request an order enjoining Defendant from litigating that case and staying the matter in state court.  (ECF No. 185 at 16–20.)

While a federal court is usually prohibited from staying a state court proceeding, exceptions apply in limited circumstances.  *See* 28 U.S.C. § 2283 (prohibiting enjoining state proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments").  Although Plaintiffs argue that the Court can rely on the exception for the need to "protect or effectuate its judgments," the Court finds it unnecessary because § 2283 does not apply here.  *Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 236 (4th Cir. 2007) (discussing this "relitigation" exception).  On July 19, 2024, Defendant chose to nonsuit his lawsuit in Hanover County Circuit Court, which means there is no pending state case.  *See Temple v. Mary Washington Hosp., Inc.*, 762 S.E.2d 751, 754 (Va. 2014) ("[I]t was as if the 2010 action had never been filed, as a nonsuit leaves the situation as if the suit had never been

---

[7] *See Tanase v. Bowlero Corp., et al.*, Case No. CL24001957-00, (Hanover Cnty. Cir. Ct.) (filed June 17, 2024).  It is also worth noting that Defendant sought to countersue Plaintiffs in this case— under many of the same causes of action—but the Court denied his request due to prejudice, futility, and bad faith.  (*See* Motion for Leave to File Counterclaim and to Add an Additional Party, ECF No. 100; Mem. Order Denying Motion for Leave, ECF No. 168.)

filed."). Both the Fourth Circuit and the Supreme Court of the United States have held that § 2283 only applies to *pending* state court proceedings. *See Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965) ("Since the grand jury was not convened and indictments were not obtained until after the filing of the complaint, which sought interlocutory as well as permanent relief, no state 'proceedings' were pending within the intendment of § 2283."); *Denny's, Inc. v. Cake*, 364 F.3d 521, 531 (4th Cir. 2004) ("Therefore, we hold that the Act's prohibition on enjoining state court proceedings applies to any such proceeding pending at the time the federal court acts on the request for injunctive relief, regardless of when the state court action was filed."). Since there is no pending state court proceeding, the Anti-Injunction Act does not apply—but since there is no pending state court proceeding for the Court to enjoin, Plaintiffs' request to stay the proceeding is moot. Plaintiffs attempt to avoid this mootness, however, by arguing that Defendant may attempt to refile his lawsuit. (ECF No. 191 at 9.)[8]

If the Court were to construe Plaintiffs' request as seeking a prefiling injunction, the Court does not find Plaintiffs have presented sufficient evidence that such an injunction would be appropriate. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004); *Powhatan Cnty. Sch. Bd. v. Halvorsen Next Friends of A.H.*, No. 3:24CV216, 2024 WL 3834891, at *6 (E.D. Va. Aug. 15, 2024). Although Defendant lodged an undoubtedly frivolous lawsuit that challenged the factual findings this Court

---

[8] Although Plaintiffs raise this argument in their brief in response to Defendant's jury demand, they do not advance this argument in their subsequent briefing on damages. (*See* ECF Nos. 196, 202.)

made only four (4) days earlier, he nonsuited it after Plaintiffs demanded he drop the case. Beyond the case in Hanover County Circuit Court, and the notably egregious behavior throughout the case before this Court, Plaintiffs have not shown that Defendant has a history of "vexatious, harassing, or duplicative lawsuits." *See Cromer*, 390 F.3d at 818. If Defendant files additional frivolous lawsuits, Plaintiffs are capable of asserting *res judicata* and requesting sanctions under Rule 11 or Virginia Code § 8.01-271.1. Accordingly, this Court refrains from issuing "[s]uch a drastic remedy," particularly where Plaintiffs do not explicitly request and brief such a remedy. *See Cromer*, 390 F.3d at 817.

### E. Attorneys' Fees and Costs Pursuant to Sanctions

Finally, the Court turns to the question of what amount of attorneys' fees and costs are reasonable and appropriate. Plaintiffs request an award in the amount of $891,400.43 for attorneys' fees incurred in connection with investigating the issues related to the manipulation of the originally produced June 17 Recording and preparing its initial and amended Motion for Sanctions and supporting memoranda of law, as well as for continuing to litigate the Amended Motion, including complying with this Court's Order for further briefing. (ECF No. 202 at 9; *see* Am. Summ. J. Mem. Op. at 8 (finding an award of attorneys' fees and costs was an appropriate sanction for Defendant's bad faith).) The Court evaluates the reasonableness of Plaintiffs' request in a general three (3) step process.

First, the Court must determine the "lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.,*

*LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).  Twelve (12) factors—referred to as the *Johnson* factors—guide the Court's determination of what constitutes a reasonable number of hours and their rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  After calculating the appropriate lodestar figure, the Court "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (quoting *Grissom*, 549 F.3d at 321).  And finally, the Court then "awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

Plaintiffs are represented by Kaufman & Canoles, P.C. ("K&C"), who serve as local counsel, and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), who is based out of New York and served as out-of-town and lead trial counsel.  Defendant principally challenges Quinn Emmaneul's fees as unreasonable. (*See* ECF No. 199 at 7–9.)  Rates for Quinn Emanuel counsel range from $990 for associates to $2,180 for partners.[9] (*See* ECF No. 202-1.)  Considering the rates for local counsel at K&C range

---

[9]  Quinn Emanuel applied a 10% discount on each invoice to Bowlero.  Accordingly, the effective rate—and the rate Plaintiffs request—is 10% less than these quoted rates. (*See* ECF No. 202-2 ¶¶ 8–9.)

from $250 for associates, to $700 for partners, *see* ECF No. 202-2 ¶ 2, Defendant

contends Quinn Emanuel's rates are far from the "prevailing market rates in the relevant

community." (*See* ECF No. 199 at 9 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir.

1990).) Moreover, Defendant contends that Quinn Emanuel's rates have already been

considered unreasonable for the Richmond legal market and the Court should reach a

similar conclusion. (*See id.* at 8–9 (citing *SS Richmond LLC v. Harrison*, No. 3:22-cv-

405, 2023 WL 7646505, (E.D. Va. Nov. 14, 2023)).)

In addition to providing the Court with Quinn Emanuel's billing records, Plaintiffs

submitted a Declaration from Dabney J. Carr, IV, Esquire, a partner at Troutman Pepper

Locke, LLP in Richmond, who advised that he believes Plaintiffs' rates were "reasonable

and [] within the prevailing rates charged by similarly experienced and skilled counsel for

work in similar types of complex litigation." (ECF No. 196-2 at 4.) Moreover, although

Plaintiffs acknowledge that Quinn Emanuel's rates vary from K&C's rates, they argue

the Court should apply "out-of-town rates" and find the rates are reasonable. (ECF No.

202 at 3.) Plaintiffs also note that in *SS Richmond* the court found that out-of-town rates

were not appropriate. But since out-of-town rates are appropriate here, Plaintiffs contend

*SS Richmond* is inapplicable. (*Id.*)

Ordinarily, the Court must look to the "prevailing market rates in the relevant

community for the type of work for which [a party] seek[s] an award." *Robinson*, 560

F.3d at 243 (quoting *Plyler*, 902 F.2d at 277). Yet sometimes "the complexity and

specialized nature of a case may mean that no attorney, with the required skills, is

available locally." *SS Richmond*, 2023 WL 7646505, at *6 (quoting *Nat'l Wildlife Fed'n*

17

*v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).  When this is the case, the Court "may apply out-of-town rates if the fee applicant demonstrates that (1) adequate local counsel was genuinely unavailable and (2) the party acted reasonably in choosing counsel from elsewhere." *Id.* (citing *Hanson*, 859 F.2d at 317–18).  Here, the Court finds that Plaintiffs are entitled to out-of-town rates because Quinn Emmanuel was the only counsel available to rapidly respond to the fast-paced legal situation Defendant placed Plaintiffs in.

Before Plaintiffs initiated this lawsuit—and before Plaintiffs discovered Defendant's conduct—Bowlero had *already* retained Quinn Emanuel for a related matter.[10]  (ECF No. 196 at 7; ECF No. 202 at 3.)  When Defendant illegally accessed Bowlero's servers or system and the accounts of Bowlero's CEO, he accessed confidential information and communications between Bowlero and Quinn Emanuel, including communications between Bowlero and several counsel on this case.  (*See* ECF No. 120 at 6 (citing Ex. 6, Tanase Dep. at 211:21–25, ECF No. 120-4; Ex. 10, Bowlero Privilege Log, ECF No. 120-5).)  Due to Quinn Emanuel's ongoing engagement with Bowlero, Quinn Emanuel was uniquely situated to litigate Plaintiffs' claims.  Although Plaintiffs may have been able to hire local counsel as lead trial counsel, doing so would have come at the additional expense of time, resources, and money—particularly considering the urgency of the situation.  Throughout May and June of 2023, Defendant repeatedly accessed Bowlero's systems and Bowlero needed to rapidly respond to these unauthorized intrusions.  Quinn Emmanuel was essential to Bowlero's quick response of

---

[10]  This matter has resulted in litigation in the Eastern District of New York.  *See Alloway, et al. v. Bowlero Corp. et al.*, Case No. 2:24- cv-04738-JS-JMW.

investigating the access, issuing a cease-and-desist letter, and ultimately filing this lawsuit moving for, *inter alia*, a temporary restraining order and preliminary injunction. Thus, it was reasonable—and indeed necessary—for Bowlero to continue retaining the counsel best poised to represent it. Accordingly, the Court finds that based on Quinn Emmanuel's history with the case and Bowlero, the complexity of the case, and the inability of local counsel to adequately provide "services of like quality," Plaintiffs reasonably chose their counsel, and the application of out-of-town rates is appropriate. *See Hanson*, 859 F.2d at 317.

The Court must now consider whether Quinn Emanuel's out-of-town hourly rates are reasonable. Due to Defendant's misconduct, Plaintiffs were forced to expend hundreds of additional hours in investigation, drafting, and argument, resulting in two (2) motions for sanctions, a motion to compel further deposition, and two (2) *additional* depositions.[11] Plaintiffs' counsel performed exceptionally well in what—unnecessarily— became a complicated case. Despite these complications and Defendant's repeated dilatory behavior, Plaintiffs' counsel diligently pursued the case with a high degree of success, receiving summary judgment, for example, less than a year after initiating the lawsuit.

In addition to the Court's knowledge of the case and counsels' participation throughout the case, Plaintiffs have filed evidence of Quinn Emanuel's "actual billing

---

[11] While the Court focuses on the impetus for sanctions, it is also worth noting that counsel have exhibited exceptional skill in litigating a TRO and preliminary injunction, motion to dismiss, multiple discovery disputes, leave to file a counterclaim, motion to disqualify counsel, and multiple matters which required supplemental briefing in this case.

practice," including the relevant monthly invoices.  They also, as previously mentioned, included a Declaration attesting to the reasonableness of Quinn Emanuel's hourly rate. Although Quinn Emanuel's hourly rates are substantially higher than those of K&C, the Court knows that they are not atypical rates for New York City law firms of similar caliber, experience, and size.[12]  Furthermore, Plaintiffs only request the fees they actually billed, which includes a 10% discount from Quinn Emanuel.  Therefore, considering the *Johnson* factors, the Court finds that Quinn Emanuel's out-of-town hourly rates are reasonable.[13]

Defendant objects to the amount of hours expended by counsel on three (3) grounds.  First, Defendant argues that Plaintiffs included in their request tasks that fall outside the scope of the Court's sanction.  (ECF No. 199 at 10.)  Second, he asserts that the time expended "is excessive and unreasonable for such little actual work product." (*Id.* at 11.)  Third, Defendant contends that Plaintiffs' billing includes mixed entries, where counsel billed for conduct that falls under the Court's sanction and conduct that falls outside it, for example, billing for drafting both the motion for sanctions and motion for summary judgment.  (*Id.* at 12.)

---

[12]  As with any legal market, billable rates vary significantly from firm to firm, depending on size, experience, and the reputation of a firm in a specific area of the law, among other factors. Quinn Emanuel employs over 1,000 attorneys and is well regarded for their litigation prowess. The Court notes that some law firms of similar size in Richmond charge a range of $500 for junior associates to $1,350 for top partners.

[13] Defendant does not appear to contest the reasonableness of Kaufman & Canoles' hourly rate. Regardless, the Court believes its hourly rate is reasonable for the Richmond market.

Plaintiffs respond that they were careful not to overclaim attorneys' fees and did not seek any fees proceeding March 11, 2024, when Plaintiffs first learned that Defendant perjured himself. (ECF No. 202 at 6.) Additionally, Plaintiffs counter that, contrary to Defendant's arguments and his attached declaration, Plaintiffs only request 50% of its fees for any mixed entries. (*Id.* at 10.) This reduction, Plaintiffs note, is very conservative, considering courts frequently apply substantially smaller reductions for mixed entries. (*Id.* (citing *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525–26 (E.D. Va. 2017) (reducing award by 10% due to block billing); *Lamb v. Liberty Univ., Inc.*, Case No. 6:21-cv-00055, 2024 WL 1315919, at *4 (W.D. Va. Mar. 27, 2024) (reducing award by 5%).)

The Court first determines what attorneys' fees fall within the scope of the Court's sanctions. As the Court discussed in its Memorandum Opinion on Defendant's Motion to Reconsider, the Court may only impose sanctions that are directly related to the harm. *See Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 144 (4th Cir. 2024); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Consequently, the Court assesses what attorneys' fees appropriately compensate Plaintiffs for "the misconduct at issue." *See Goodyear*, 581 U.S. at 108. To review, the Court found that Plaintiffs were entitled to attorneys' fees and costs in connection with investigating the issues related to the manipulation of the originally produced June 17 Recording and preparing its initial and amended Motion for Sanctions, and supporting memoranda of law as well as for continuing to litigate the Amended Motion, including complying with the Court's

21

supplemental briefing order.  (ECF No. 195.)  In response, Plaintiffs request the

following fees:

| TASK | QUINN EMANUEL HOURS | QUINN EMANUEL FEES | K&C HOURS | K&C FEES |
|---|---|---|---|---|
| (1) Motion to Compel Further Deposition | 81.6 | $ 77,699.93 | 3.25 | $ 1,330.50 |
| (2) Motion for Sanctions | 95.55 | $ 101,522.70 | 5.6 | $ 2,157.00 |
| (3) Investigation of Recording and Motion for Amended Sanctions | 115.6 | $ 122,236.65 | 22.65 | $ 9,064.50 |
| (4) Second Deposition of Tanase | 109.2 | $ 117,515.48 | 18.05 | $ 6,488.50 |
| (5) Third Deposition of Tanase | 49.65 | $ 51,492.15 | 5.3 | $ 2,385.00 |
| (6) Briefing on Damages | 129.4 | $ 124,789.95 | 22 | $ 8,450.00 |
| (7) Response to Tanase's Jury Demand | 42.5 | $ 37,426.95 | 3.3 | $ 1,485.00 |
| (8) Response to Tanase's Motion for Reconsideration | 36 | $ 37,851.30 | 3.65 | $ 1,642.50 |
| (9) Further Briefing In Support of Damages | 161.55 | $ 183,428.33 | 9 | $ 4,434.00 |
| **TOTAL** | **821.05** | **$ 853,963.44** | **92.8** | **$ 37,437.00** |
| | **PLAINTIFFS' FEE REQUEST** | | | **$ 891,400.44** |

(ECF No. 202 at 9.)

The Court expressly granted attorneys' fees for Items (1) through (5) and (9) and the Court need not discuss those items in any further detail. (*See* ECF No. 195.) The Court finds that Plaintiffs' fees related to Defendant's jury demand—Item (7)— are also within the Court's sanction and "go no further than to redress" Plaintiffs for their losses. *See Goodyear*, 581 U.S. at 108. Initially, when the Court determined Plaintiffs were entitled to attorneys' fees under the VCCA, Defendant countered that a jury needed to provide the appropriate amount. Yet after the Court's reconsideration and order further clarifying that attorneys' fees would be awarded as a sanction, Defendant again asserted that he may be entitled to a jury trial. (*See* ECF No. 199 at 13.) As the Court discussed, Defendant was not entitled to a jury trial because summary judgment was appropriate *and* because default judgment was awarded as a sanction. Ultimately, briefing on the jury issue would not have been necessary but for Defendant's fraud upon the Court. Consequently, Plaintiffs are entitled to attorneys' fees for Item (7).

However, the Court will not award fees for responding to Defendant's Motion for Reconsideration. Although the briefing focused on whether attorneys' fees were appropriate, it did so only in context of the VCCA. Furthermore, the Court does not find it appropriate to effectively punish Defendant for a meritorious motion. Accordingly, the Court will deduct $37,581.30 and $1,642.50 from Plaintiffs' request.

Similarly, the parties' original briefing on damages related to what amount of attorneys' fees would be appropriate under the VCCA. Though there is substantial cross-over between both the supplemental briefings on attorneys' fees, the briefing on damages

would have been necessary even if the Court withheld sanctions. Thus, the Court will deduct $124,789.95 and $8,450 from Plaintiffs' request.

Finally, the Court considers whether further reduction is warranted for mixed entries. Both Quinn Emanuel and K&C practice "block billing," where a single entry may contain work for multiple facets of a case. This practice is not uncommon among law firms, nor is it *"per se* prohibited by the courts." *See Colonial River Wealth Advisors, LLC, v. Cambridge Inv. Rsch., Inc.*, No. 3:22-cv-717, 2024 WL 69071, at *8 (E.D. Va. Jan. 5, 2024) (italics in original). Problems only arise when the billing entries "lack sufficient detail and therefore obscure the amount of time actually spent on the billed-for tasks." *Id.* Defendant's main contention is that Plaintiffs' counsels' entries are combined with unauthorized issues such as summary judgment, Defendant's motion for leave to amend, and Defendant's motion for disqualification. (ECF No. 199 at 12.) In Plaintiffs' opening brief, however, they addressed precisely these concerns and requested an award of fees that included a 50% reduction from those mixed entries.[14] Court have often applied similar reductions when billing entries combine work for multiple matters. *See Denton*, 252 F. Supp. 3d at 525–26 (reducing award by 10% due to block billing); *Lamb*, 2024 WL 1315919, at *4 (reducing award by 5%); *Wolfe v. Green*, Case No. 2:08-01023, 2010 WL 3809857, at *8 (S.D. W. Va. Sept. 24, 2010) (collecting cases). The

---

[14] Defendant also included a declaration outlining each of the allegedly unauthorized entries. (ECF No. 199-1.) But as Plaintiffs note in their reply, not only is the declaration riddled with errors, it also only identifies the very same entries that Plaintiffs highlighted in their opening brief, which are subject to their 50% reduction for mixed entries. (ECF No. 202 at 12 n.10.)

Court finds that Plaintiffs' reduction of 50% is reasonable and appropriate to properly account for entries that contain matters outside of the Court's sanction.

The Court returns to Plaintiffs' request for reimbursement of costs. Previously, the Court noted the limited definition of "costs" under the CFAA and VCCA. *See supra* Section II.B. Although many of Plaintiffs' costs are not included under these statutes, some of them are related to Defendant's misconduct and thus may be included as a sanction. (*See* Order at 1, ECF No. 195 (granting sanctions for attorneys' fees *and* costs).) Accordingly, the Court finds that Plaintiffs are entitled to $19,040.13 in costs related to investigating the June 17 Recording and litigating sanctions, which accounts for approximately 50% of Plaintiffs' costs after discovering Defendant's perjury on March 11, 2024. This includes travel expenses and other costs required to conduct multiple depositions of Defendant and litigate several motions related to his misconduct. Consequently, the Court will award Plaintiffs a total of $737,706.81 in attorneys' fees and costs.

### III. MOTION TO WITHDRAW

Since the conclusion of briefing, Defendant's counsel filed a Motion to Withdraw as counsel. (Mot. to Withdraw at 1.) The decision to grant a motion to withdraw "lies within the sound discretion of the trial judge." *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1142 (4th Cir. 1990). In the Eastern District of Virginia, courts "appl[y] the rules in the Virginia Code of Professional Conduct as the first step in deciding whether counsel may be given leave to withdraw." *Banilla Games v. 757 Money Team*, No. 2:22CV520, 2023 WL 6192721, at *2 (E.D. Va. Apr. 27, 2023)

(quoting *In re God's Mercy, LLC*, 285 F. Supp. 3d 904, 907 (E.D. Va. 2018)); *see* E.D. Va. Loc. R. 83.1(J). Rule 1.16 of the Virginia Rules of Professional Conduct states that "a lawyer may withdraw from representing a client . . . if . . . the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled," or if "the representation will result in an unreasonable financial burden on the lawyer." In addition to Rule 1.16, the Court "may consider the disruptive impact the withdrawal would have." *Fifth Third Bank, Nat'l Ass'n v. Metro Bus. Sys., LLC*, No. 1:21-CV-832, 2022 WL 18912677, at *1 (E.D. Va. Jan. 24, 2022) (quoting *Patterson v. Gemini Org., Ltd.*, 238 F.3d 414 (4th Cir. 2000) (unpublished table decision)). Disruptive impacts may include consideration of whether discovery deadlines have passed, whether serious motions are pending, or ultimately whether new counsel would have sufficient time to adequately participate and file appropriate motions before deadlines pass. *Id.*

Here, defense counsel asserts that Defendant has failed to fulfill an obligation to counsel Alan J. Cilman, Esquire, and I. Scott Pickus, Esquire, and "continued representation will result in an unreasonable financial burden on" counsel. (Mot. to Withdraw at 1.) Notably, Plaintiffs object to Defense counsel's requested withdrawal. (*Id.*)

Although defense counsel identifies legitimate bases for withdrawing as counsel under the Virginia Rules of Professional Conduct, this case has run its course and reached its final end. Upon entry of an appropriate order accompanying this opinion, the Court will enter a final judgment and close the case. The only remaining representation

Defendant may require is the filing of a notice of appeal and the initiation of the appellate process, which must be done within thirty (30) days from the entry of the judgment. *See* Fed. R. of Appellate P. 4. Permitting defense counsel's withdrawal at this stage might very well undermine Defendant's ability to file an appeal.[15] Although the Court recognizes that continued representation of Defendant may burden counsel, the Court believes such burden is minimal compared to the potential prejudice of Defendant being unable to adequately exercise his right to appeal. Consequently, the Motion to Withdraw will be granted in part and denied in part.

Counsel shall continue their representation of Defendant until either (1) thirty (30) days have passed since the entry of the accompanying final order, (2) Defendant files a notice of appeal, or (3) new counsel for Defendant has noted an appearance. Upon the realization of one of these three (3) conditions, defense counsel shall be relieved of any duty to further represent Defendant. If Defendant intends to pursue any claims on appeal, he must hire new counsel or proceed *pro se*.

## IV. CONCLUSION

For the reasons stated herein, the Court will enter judgment in favor of Plaintiffs in the amount of $1,161,723.52, itemized as follows: (1) $74,016.71 in damages under the CFAA and VCCA; (2) $350,000 in punitive damages; (3) and $737,706.81 in attorneys'

---

[15] The Court does not suggest that Defendant has any meritorious claims on appeal. Instead, the Court merely believes that defense counsel is specially situated to know whether any issues are appropriate for appeal and absent counsel's temporary continued representation, Defendant may be deprived of adequate opportunity to press those issues.

fees and costs pursuant to this Court's sanction. The Court will also enter a permanent injunction enjoining Defendant from further violations of the CFAA and the VCCA, and from breaching his Employment Agreement. The sum of Plaintiffs' awards will be subject to statutory post-judgment interest pursuant to 28 U.S.C. § 1961.[16]

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____

Henry E. Hudson
Senior United States District Judge

Date: April 16, 2025
Richmond, Virginia

---

[16] Defendant makes several requests in his brief, including the imposition of sanctions against Plaintiffs and the award of attorneys' fees *to Defendant* at a rate twice that of Plaintiffs' counsel—i.e., over $4,000 per hour. Not only are these requests improperly raised in a brief, not a motion, but they are wholly without merit.